Lawrence DALTON, Petitioner–
Appellant,

v.

Deirdre BATTAGLIA, Warden, State-
ville Correctional Center,\* Re-
spondent–Appellee.

No. 03–3982.

United States Court of Appeals,
Seventh Circuit.

Argued June 8, 2004.
Decided March 23, 2005.

---

\* It appears that the petitioner in this case was transferred twice while his appeal was pending, first from the Green Bay Correctional Institution to the Oshkosh Correctional Institution in Wisconsin, and then to the Stateville Correctional Center in Illinois, where he is currently incarcerated. The government did not follow the procedures spelled out in Fed. R.App. P. 23(a), which says that "[p]ending review of a decision in a habeas corpus proceeding commenced before a court, justice, or judge of the United States for the release of a prisoner, the person having custody of the prisoner must not transfer custody to another unless a transfer is directed in accordance with this rule." Furthermore, neither party followed Circuit Rule 43, which requires that "in collateral attacks on confinement, the par-

ties must notify the court of any change in custodian or custodial status." While the failure of counsel to follow these procedures complicated matters and added work for the court, we find these errors harmless because Dalton was in the custody of Illinois for his convictions in Illinois while serving his concurrent term for his convictions in Wisconsin and therefore the Illinois Attorney General was always one of the proper respondents in this action. See *Braden v. 30th Judicial Circuit Court*, 410 U.S. 484, 498–99, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973). Therefore, on our own motion, we have substituted Deirdre Battaglia, the warden at Stateville Correctional Center, Dalton's current prison, as the respondent in this case.

Eric Grush (argued), Sidley Austin Brown & Wood, Chicago, IL, for Petitioner–Appellant.

Michael M. Glick (argued), Office of The Attorney General, Chicago, IL, for Respondent–Appellee.

Before EASTERBROOK, KANNE, and WOOD, Circuit Judges.

WOOD, Circuit Judge.

Eight years after he pleaded guilty to charges of murder and rape, Lawrence Dalton filed a post-conviction petition in the Circuit Court of Cook County, Illinois. Dalton argued that his due process rights were violated because he was unaware of his eligibility for an extended sentence under Illinois law when he submitted his plea and thus his plea was not knowing and voluntary. Later, Dalton also claimed that his Sixth Amendment right to effective assistance of counsel had been violated when his trial attorney failed to request a competency hearing after he attempted suicide two days before pleading guilty. After the state courts finally rejected his claims, he filed a timely petition for relief under 28 U.S.C. § 2254.

It is now twenty-three years after Dalton's plea hearing and conviction. Undoubtedly in part because of the passage of time, Dalton's *habeas corpus* petition comes to this court accompanied by a state court record missing more than it includes. At some point during the state court proceedings, the transcript of Dalton's plea hearing disappeared. Then, in the midst of his appeal from the denial of his post-conviction petition, the state destroyed the remaining records of his proceedings before the circuit court. The state now asks that we construe the gaps in the record against Dalton and deny his request for § 2254 relief on his due process claim on this basis, notwithstanding his submission of two affidavits stating that he was not made aware of his eligibility for an extended sentence at the time of his plea. In the circumstances of this case, however, such

an approach is inappropriate. Instead, we remand for an evidentiary hearing on the question whether Dalton knew that he was eligible for such a sentence when he pleaded guilty. Dalton also asks that we expand his certificate of appealability to include his ineffective assistance of counsel claim, but we conclude that he is not entitled to this additional measure.

**I**

On October 31, 1979, Dalton was convicted of first-degree murder, kidnapping by deceit, and second-degree sexual assault in the Circuit Court of Kenosha County, Wisconsin, and sentenced to life in prison with eligibility for parole. The state determined that he "ha[d] mental (and physical) aberrations as to sexual matters and [wa]s in need of specialized treatment" and committed him to Central State Hospital in Wisconsin. While at Central State, Dalton repeatedly attempted to commit suicide and refused food for extended periods. He often needed to be restrained and forcibly fed.

While still a patient at Central State, Dalton faced murder and rape charges in the Circuit Court of Cook County, Illinois, for an unrelated crime. On August 23, 1981, two days after arriving in Illinois, Dalton attempted to kill himself and was admitted to Cermak Hospital. Three days later, at the request of Dalton's counsel, Judge Thomas Maloney ordered a clinical behavioral examination of Dalton. On September 9, 1981, a Prison Health Services psychiatrist diagnosed Dalton with "schizophrenia paranoid type in remission" and placed him on Navane, an anti-psychotic drug. Shortly thereafter, Dr. Gerson Kaplan of the Psychiatric Institute examined Dalton. In a September 15, 1981, letter to Judge Maloney, Dr. Kaplan deemed Dalton mentally fit for trial (or so we are told—the letter is also missing).

Dr. Kaplan went on to opine that Dalton understood the nature of the charge pending against him, the purpose of the proceedings and was able to cooperate with counsel in his defense. It is not clear from the record whether Dalton had a competency hearing, but on October 8, 1981, Judge Maloney found Dalton fit for trial.

On November 18, 1981, Dalton again attempted suicide by trying to hang himself. Two days later, he pleaded guilty to three counts of murder and one count of rape. Dalton's counsel did not request, and Judge Maloney did not order, a competency hearing prior to his plea. Judge Maloney sentenced Dalton to 70 years' imprisonment on each of the murder counts (an "extended sentence" under Illinois law, as discussed below) and 30 years on the rape count, to be served concurrently. Dalton never appealed his convictions, but eight years later, on March 30, 1989, he filed a petition for post-conviction relief in the Circuit Court of Cook County, in which he argued that his Illinois convictions had to be vacated because he did not knowingly and voluntarily waive his rights when he pleaded guilty. He explained that he was heavily medicated at the time of his plea and thus was unable to understand the effect of his plea or his sentence. He also argued that he was never informed that he risked an "extended term" sentence under Illinois law. See 730 ILCS 5/5–8–2 (authorizing terms of imprisonment in excess of the maximum sentence provided by the statute if the "factors in aggravation set forth in paragraph (b) of Section 5–5–3.2[are] found to be present"). Dalton's case meandered through the circuit court's docket for more than six years, until October 24, 1995, when the court finally rejected his petition. During the intervening period, Dalton repeatedly—but unsuccessfully—attempted to obtain a copy of the state court record of his trial. Among the documents Dalton sought was a copy of the transcript of his plea hearing, but in a letter dated February 2, 1992, the Office of the Official Court Reporters of the Circuit Court of Cook County informed him that the state could not locate the transcript.

The state court denied Dalton's post-conviction petition because it "fail[ed] to demonstrate a deprivation of a constitutional right." Although the court was "disturbed that a transcript of Petitioner's plea [was] unavailable," it stated that "several pleadings within the court file leads this Court to believe the Petitioner's plea was knowingly and intelligently entered." These pleadings included "an executed jury waiver, an executed waiver of presentence investigation report, a file stamped letter from the Psychiatric Institute stating that the Petitioner is mentally fit for trial and a certified statement of conviction indicating Petitioner was found fit." The court also noted that the state had filed "an affidavit from the Assistant State's Attorney present at the plea," which stated that "Petitioner was advised of his rights and of the applicability of the extended term sentence." At the request of Dalton's counsel, the court appointed a public defender to represent him on appeal. Before the Illinois Appellate Court, the public defender filed a motion for leave to withdraw pursuant to *Pennsylvania v. Finley,* 481 U.S. 551, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987). The court summarily rejected Dalton's petition and granted counsel's motion, stating: "We have reviewed the record in the case, defendant's lengthy *pro se* response and the aforesaid brief in compliance with *Finley,* and we find no issues of arguable merit." The Illinois Supreme Court denied Dalton leave to appeal on December 4, 1996.

On April 3, 1997, Dalton filed a *pro se* petition for a writ of *habeas corpus* in district court and was appointed counsel.

Dalton's petition argued that the state court violated his due process rights by failing to conduct a competency hearing prior to accepting his guilty plea; that he was denied effective assistance of counsel because his trial attorney failed to request a competency hearing after the November 18 suicide attempt and prior to the guilty plea; and that the state court violated his due process rights when it failed to advise him of the possibility of an extended term sentence, with the consequence that his guilty plea was not knowing and voluntary. The court rejected all these claims, but it granted Dalton a certificate of appealability with respect to the third issue. On appeal, Dalton asks that we expand the certificate of appealability to include his ineffective assistance of counsel claim.

## II

### A

Dalton argues that his due process rights were violated because his guilty plea in the state court was not knowing and voluntary. This is so, he contends, because he "was not aware of the maximum punishment he could receive," specifically the possibility of an extended term sentence under Illinois law. Our review of Dalton's petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254, which permits a federal court to issue a writ of *habeas corpus* only if the state court reached a decision on the merits of a claim, and that decision was either "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

In *Brady v. United States,* 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970), the Supreme Court held that a defendant's guilty plea "not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences," *id.* at 748, 90 S.Ct. 1463. The Court defined voluntariness as follows: "[A] plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper ...." *Id.* at 755, 90 S.Ct. 1463 (internal quotation marks omitted).

■ Although the Supreme Court has not defined the "direct consequences" of a guilty plea, it must have intended this term to encompass the maximum sentence for which a defendant is eligible. Compare Fed.R.Crim.P. 11(b)(H)-(M); Ill. S.Ct. Rule 402(a)(2). We can imagine no consequence of a defendant's guilty plea more direct, immediate, and automatic than the maximum amount of time she may serve as a result of her plea. See *Warren v. Richland County Circuit Court,* 223 F.3d 454, 457 (7th Cir.2000). While a defendant need not know "*all* the consequences, such as loss of the right to vote or of the right to own a gun, or the effect on future sentences," he must "certainly [know] the maximum punishment that he faces if he is convicted in the case at hand." *Trueblood v. Davis,* 301 F.3d 784, 786 (7th Cir.2002) (citing *United States v. Lumpkins,* 845 F.2d 1444, 1449 (7th Cir.1988)). Indeed, as a matter of state law (which of course is not our concern), Illinois requires this for extended term sentences. See 730 ILCS 5/5–8–2(b) (providing, for purposes of extended term sentences, that "[i]f the conviction was by plea, it shall appear on the record that the plea was entered with the defendant's

knowledge that a sentence under this Section was a possibility" and "[i]f it does not so appear on the record, the defendant shall not be subject to such a sentence unless he is first given an opportunity to withdraw his plea without prejudice"). We conclude that the potential length of the sentence is one of the "direct consequences" to which the Supreme Court referred in *Brady;* thus, if Dalton was unaware of his eligibility for an extended term sentence when he pleaded guilty, it would be an unreasonable application of *Brady* to find that his plea was knowing and voluntary.

■ On the record as it stands, unfortunately, there is no way for this court or any other court rationally to determine whether Dalton's constitutional right to due process was violated in this way. The parties agree that the transcript of Dalton's plea hearing has disappeared and is not available, leaving no official record of the exchange between Dalton, his attorney, and Judge Maloney when he pleaded guilty. In addition, Dalton has submitted documentation showing that all records associated with his case before the circuit court, including his medical and psychiatric records from his time in Cook County Jail prior to his return to Central State, were destroyed by the State of Illinois on or about November 15, 1995. The destruction of these records is troubling, as it occurred less than a month after the Illinois circuit court denied his post-conviction petition and six months *before* the Illinois appellate court reviewed his appeal from that denial.

Nevertheless, the records are gone, and we must decide whether the district court should have turned to the second-or third-best alternative and tried to reconstruct what was said to Dalton through an evidentiary hearing. This depends on whether Dalton has demonstrated that such a

hearing might be fruitful. Right now, the record contains two hints of what might occur at such a hearing. First, the Assistant State's Attorney might testify—a possibility suggested by a passing reference in the circuit court's order denying Dalton's post-conviction petition to an affidavit from the Assistant State's Attorney "recall[ing] that] Petitioner was advised of his rights and of the applicability of the extended term sentence." (That affidavit has apparently also disappeared.) Second, Dalton has submitted two affidavits that contradict the Assistant State's Attorney's recollection (assuming the accuracy of the state court's report of the missing affidavit).

■ The first affidavit Dalton has submitted, dated February 16, 1995, is his own. In it he relates:

> I was told at court if I plead guilty I would get forty years for murder, 30 years for rape, so it would total 70 years, but the sentence was to run together, which meant only forty years, and to run together with the Wisconsin sentence.... The Judge did not tell me that I was going to get an extended term or even ask me anything, or ask me if I had anything to say.

The second affidavit is from Dalton's mother, Dalia Dalton, and states:

> [I] went to the court hearing of [N]ov 20, 1981 in [J]udge [M]ahoney [*sic*] courtroom the day my son went to court[.] [S]ince [I] know very little about law [I] did not understand what was going on in the courtroom[.][T]he only thing [I] know for sure was no one said anything about a[n] extended term for my son[.]

The district court found that Dalton could not prevail based on these affidavits, stating that "Petitioner's only 'evidence' consists of his own self-serving statements that no one told him about the possibility

of an extended sentence." This comment, however, is reminiscent of the old common-law rule that made parties incompetent to serve as witnesses in their own cases. That rule was discarded long ago. Instead, a witness's potential self-interest in testifying about matters for which he or she has direct knowledge goes to the weight and credibility of the testimony, not to its admissibility. We have repeatedly stated that the record may include a so-called "self-serving" affidavit provided that it is based on personal knowledge, as were Dalton's and his mother's affidavits. See *Payne v. Pauley*, 337 F.3d 767, 772–73 (7th Cir.2003); *Paters v. United States*, 159 F.3d 1043, 1047 (7th Cir.1998).

In a footnote, the district court also dismissed Ms. Dalton's affidavit as having "little probative value" because it "does not explain, for example, whether she was present for Petitioner's guilty plea, whether she heard what Judge Maloney said to Petitioner, whether she was privy to Petitioner's conferences with counsel, or whether Petitioner simply relayed this claim to her." In fact, Ms. Dalton's affidavit makes clear that she was present in Judge Maloney's courtroom during Dalton's plea hearing on November 20, 1981, and that she was "sure" that "no one said anything about an extended term for [her] son." These affidavits therefore provide competent evidence of Judge Maloney's communications with Dalton at his plea hearing regarding his eligibility for an extended sentence. Assuming (generously to the state) that it can somehow recreate the substance of the Assistant State's Attorney's affidavit in an admissible form, we are faced with a genuine dispute of fact on a critical matter.

 The state argues that this indeterminacy automatically means that Dalton's petition must be rejected, because of the presumption of regularity to which state court proceedings are generally entitled. It relies on *Parke v. Raley*, 506 U.S. 20, 113 S.Ct. 517, 121 L.Ed.2d 391 (1992), in which the Supreme Court considered whether *habeas corpus* relief was available to Raley, who was charged with being a persistent felony offender based on two prior burglaries to which he had pleaded guilty, *id.* at 23, 113 S.Ct. 517. Raley argued in his post-conviction petition that these prior convictions should have been suppressed under *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), "because the records did not contain transcripts of the plea proceedings and hence did not affirmatively show that respondent's guilty pleas were knowing and voluntary." *Id.* The Kentucky courts relied on the presumption of regularity accorded state convictions in rejecting this claim. The Supreme Court found "no tension between the Kentucky scheme and *Boykin,*" explaining that "[t]here is no good reason to suspend the presumption of regularity here.... On collateral review, we think it defies logic to presume from the mere unavailability of a transcript (assuming no allegation that the unavailability is due to governmental misconduct) that the defendant was not advised of his rights. In this situation, *Boykin* does not prohibit a state court from presuming, *at least initially,* that a final judgment of conviction offered for purposes of sentence enhancement was validly obtained." *Id.* at 29–30, 113 S.Ct. 517 (internal citations omitted) (emphasis added).

*Raley,* however, is concerned with a different problem, namely, a collateral attack on prior convictions that are being used to enhance a current sentence. In that situation, the Supreme Court has made it clear that such attacks are essentially foreclosed, unless the defendant can show that she was not represented at all. See, *e.g., Daniels v. United States*, 532 U.S. 374, 378, 121

S.Ct. 1578, 149 L.Ed.2d 590 (2001); *Custis v. United States*, 511 U.S. 485, 490–97, 114 S.Ct. 1732, 128 L.Ed.2d 517 (1994). Dalton's case is quite different: he is presenting an attack on the validity of his guilty plea in the very proceeding that is the subject of the *habeas corpus* petition. The extraordinary concerns for finality that motivated the Supreme Court in *Daniels* and *Custis* are not present; instead, the finality rules are those set forth in § 2254.

Here, the confluence of the missing plea transcript and the destruction of Dalton's state court records prior to the time when the Illinois appellate court had a chance to review the case suggest that there *is* good reason to suspend the presumption of regularity. (Although our confidence in the outcome is not enhanced by the fact that it was the infamous Judge Maloney presiding over the case, see generally *Bracy v. Gramley*, 520 U.S. 899, 901, 117 S.Ct. 1793, 138 L.Ed.2d 97 (1997), we have not taken his ignominious history into account in our analysis.) Absent a presumption of regularity, any assessment of Dalton's knowledge of his eligibility for an extended sentence at the time of his plea must be made based on actual evidence in the record.

Section 2254(f) places the initial burden of obtaining the necessary information from the state court record on the applicant; if he for any reason is unable to do so, then the state must produce that part of the record. *Id.* If the state cannot do so either, the statute instructs that "the court shall determine under the existing facts and circumstances what weight shall be given to the State court's factual determination." *Id.* The latter language, we note, is far from an absolute rule resolving uncertainties in the state's favor. Instead, it calls on the district court to make a judgment. In doing so, the court is also empowered under certain circumstances to hold an evidentiary hearing. See

§ 2254(e)(2). That subsection reads as follows, in relevant part:

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—
>
> (A) the claim relies on—
>
> ... (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact-finder would have found the applicant guilty of the underlying offense.

As we recently explained, the first clause of § 2254(e)(2), "failed to develop the factual basis," is a " 'conditional clause' which must be satisfied before the remainder of § 2254(e)(2) comes into play." *Owens v. Frank*, 394 F.3d 490, 499 (7th Cir.2005) (quoting *Williams v. Taylor*, 529 U.S. 420, 431, 120 S.Ct. 1479, 146 L.Ed.2d 435 (2000)). We further explained that in *Williams* the Court stated that this clause "directs attention to the prisoner's efforts in state court: Under the opening clause of § 2254(e)(2), a failure to develop the factual basis of a claim is not established unless there is lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." *Id.* (quoting *Williams*, 529 U.S. at 431–32, 120 S.Ct. 1479). "If [the Petitioner] establishes that he was diligent in his attempts to develop the factual record in the state court, he does not have to satisfy the remaining provisions of § 2254(e)(2) in order to obtain an evidentiary hearing." *Id.* Thus, we must first determine whether Dalton was diligent in his attempt to develop a factual basis of his claim in state court.

"Diligence for purposes of [§ 2254(e)(2) ] depends upon whether the prisoner made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court; it does not depend ... upon whether those efforts could have been successful." *Williams,* 529 U.S. at 435, 120 S.Ct. 1479; see also *Boyko v. Parke,* 259 F.3d 781, 791 (7th Cir.2001). Dalton, in our view, meets that demanding standard. He tried repeatedly to obtain the record, only to be thwarted at all turns. Because Dalton satisfied the diligence requirement of the first clause of § 2254(e)(2), he does not have to meet the remaining provisions of § 2254(e)(2)(A) and (B).

We are not persuaded by the state's argument that Dalton's problems were attributable to his own eight-year delay in filing his post-conviction petition. From a procedural standpoint, the state has forfeited this argument, because it never claimed before the district court that Dalton's petition should be dismissed because of prejudicial delay. *Perruquet v. Briley,* 390 F.3d 505, 517 (7th Cir.2004). Dalton is now the one who is prejudiced by this procedural misstep.

In addition, the record shows that both Dalton and his mother repeatedly attempted to obtain his state court records during the period in question, but to no avail. In his affidavit, Dalton stated that "the State of Illinois refused to provide me with the essential records or transcript of the proceedings[ ] underlying my guilty pleas in the State of Illinois." According to Dalton, even his post-conviction attorney was "unable to obtain copies of the records and transcript of proceedings underlying [his] convictions in Illinois." Likewise, Dalton's mother stated in two separate affidavits that "[she] got nowhere on trying to get transcripts for him," and that Dalton's lawyer "tried to get the transcripts from the clerk of courts of [her] son's guilty plea ..., [b]ut he was unable to get it ...." See also *State v. Dalton,* 281 Ill.App.3d 1126, 233 Ill.Dec. 768, 701 N.E.2d 833 (1996) ("Defendant's counsel eventually requested that the convictions be vacated because no transcript of the plea proceedings or stenographic notes thereon could be located.").

Once Dalton filed his petition in March 1989, it was the circuit court that was responsible for the slow pace of the litigation. It did not get around to holding a hearing until October 1995, more than *six years* later. Furthermore, while no one knows exactly when the transcript of his plea hearing disappeared, the state did not confirm its disappearance until February 1992, three years *after* Dalton filed his post-conviction petition. The record also shows that the state did not destroy the rest of his state court record until November 1995, shortly after the circuit court denied his post-conviction petition and his request for an evidentiary hearing on his claim that he did not knowingly and voluntarily plead guilty. Finally, it is important to note that throughout this period, Dalton was in psychiatric confinement in Central State Hospital and incarcerated in Wisconsin, which had to have hampered his efforts to obtain evidence regarding his plea. See *Wright v. Gramley,* 125 F.3d 1038, 1043 (7th Cir.1997). The record thus does not support the state's contention that "the lack of a state court record is directly attributable to petitioner, and not the State." We hold, therefore, that the factual basis for Dalton's due process claim went undeveloped through no fault of his own. We remand for an evidentiary hearing on whether Dalton knew, through communications with either his counsel or Judge Maloney, that he was eligible for an extended term sentence under Illinois law when he pleaded guilty.

## B

Finally, we consider Dalton's request that we expand his certificate of appealability (COA) to include his claim that his trial attorney's failure to request a competency hearing after Dalton's November 18 suicide attempt and before his November 20 guilty plea denied him effective assistance of counsel under *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In his brief, Dalton makes clear that "[b]y briefing the ineffective assistance claim, petitioner is now requesting that this Court grant a COA as to that claim." As we have held before, we can consider such a request. See *Ouska v. Cahill–Masching,* 246 F.3d 1036, 1052–53 (7th Cir.2001).

A COA may issue only for a claim for which the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). This means, according to *Miller–El v. Cockrell,* 537 U.S. 322, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003), that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Id.* at 336, 123 S.Ct. 1029 (quoting *Slack v. McDaniel,* 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000)). We agree with the district court that Dalton failed to meet this standard with respect to his claim of ineffective assistance of counsel.

Dalton's complaints about his lawyer's performance center on the lawyer's failure to request a competency hearing and more generally the lawyer's alleged failure to push the argument that Dalton was not competent to plead guilty. In fact, however, Dalton's counsel *did* request an examination of Dalton prior to his November 18 suicide attempt, and the court granted that request. In addition, Dalton's affidavit

stating that he thought "the judge was going to kill him with his magic" was not prepared until March 2, 1996, long after his plea hearing, and there is no evidence that Dalton's trial attorney was aware of these hallucinatory thoughts prior to the plea bargain. It is undisputed, however, that Dalton attempted to hang himself two days before he pleaded guilty and, notwithstanding that event, Dalton's counsel never requested a competency hearing prior to his plea.

The district court rejected Dalton's *Strickland* claim based on its finding that Dalton suffered no prejudice as a result of counsel's inaction. Given Dr. Kaplan's and Judge Maloney's familiarity with Dalton's extensive history of suicide attempts, the court concluded that "it is unlikely that Petitioner's November 18 attempted suicide, which was merely the latest in a series of suicide attempts, would have swayed Judge Maloney's determination that Petitioner was competent." In reaching this result, the court relied on *United States ex rel. Heral v. Franzen,* 667 F.2d 633 (7th Cir.1981). Dalton argues that *Heral* does not govern his case because "unlike here, the defendant's competency in *Heral* was supported by at least four psychiatric reports, the judge's colloquy with defendant, and a prior competency hearing." According to Dalton, his case is best analogized to *Brown v. Sternes,* 304 F.3d 677 (7th Cir.2002), where we found ineffective assistance of counsel when "because of the failure of [Brown's attorneys] to discover and to bring Brown's mental problems and medical history to the court's attention, his trial and sentencing were conducted without the benefit of the knowledge of the severity of his mental condition." *Id.* at 697.

Dalton's case is distinguishable from *Brown.* Counsel did not wholly ignore his client's extensive psychiatric history prior

to the guilty plea, causing a "tragic breakdown" in the criminal justice system and casting serious doubt on the defendant's competency to plead guilty. Rather, Dalton's counsel successfully requested at the outset a clinical behavioral examination of Dalton, which yielded a diagnosis of "schizophrenia paranoid type in remission" and resulted in his being prescribed Navane, an anti-psychotic drug. Furthermore, unlike in *Brown*, Dr. Kaplan was aware of Dalton's history of mental illness and repeated suicide attempts when he examined him and, notwithstanding that history, deemed him mentally fit for trial. While we do not necessarily approve of counsel's failure to request such a hearing, there is nothing in the record to suggest that the circuit court might have altered its competency determination if it had been aware of Dalton's most recent suicide attempt, given its familiarity with his extensive history of such attempts. As the district court noted, "Petitioner has not provided any contemporaneous psychiatric opinions or evaluations suggesting that he was not competent. Nor has Petitioner presented any evidence that his behavior at the time of the plea was irrational, erratic or uncontrolled, which might have prompted Judge Maloney to reconsider the competency issue." Dalton cannot show that reasonable jurists would disagree on the question whether the Illinois appellate court's denial of his ineffective assistance of counsel claim constituted an unreasonable application of *Strickland*, and we therefore decline to expand his COA to include this claim.

### III

For these reasons, we VACATE the district court's denial of relief under 28 U.S.C. § 2254 based on Dalton's due process claim and REMAND for an evidentiary hearing on whether Dalton knew that he was eligible for an extended term sentence when he pleaded guilty, and for any appropriate further proceedings. We DENY Dalton's request to expand his certificate of appealability.