# In the

# United States Court of Appeals

## For the Seventh Circuit

No. 11-1577

STEPHEN TOLIVER,

*Petitioner-Appellee,*

*v.*

WILLIAM POLLARD,*

*Respondent-Appellant.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 2:02-cv-01123—**Patricia J. Gorence**, *Magistrate Judge*.

ARGUED MAY 23, 2012—DECIDED AUGUST 6, 2012

Before POSNER, RIPPLE, and ROVNER, *Circuit Judges.*

---

* We substitute William Pollard, the current warden of Waupun Correctional Institution, as the Respondent in this action. *See* Fed. R. App. P. 43(c)(2). Also, under the Seventh Circuit's Internal Operating Procedure 6(b), this successive appeal is submitted to the same panel of judges that disposed of Mr. Toliver's prior appeal.

Ripple, *Circuit Judge*.  The State of Wisconsin appeals the district court's decision to grant Stephen Toliver a writ of habeas corpus under 28 U.S.C. § 2254. Mr. Toliver is serving a life sentence for the 1992 murder of Tina Rogers. His petition raises many claims, but here the parties focus on two: whether his trial counsel was constitutionally ineffective because counsel did not call at trial two exculpatory witnesses, and whether the prosecution failed to disclose to Mr. Toliver an exculpatory document. During the first appeal of this case, we held, with respect to the ineffective-assistance claim, that trial counsel's omissions were prejudicial. However, we remanded for fact-finding on whether they were also objectively unreasonable. We also remanded the exculpatory evidence claim for fact-finding on whether the prosecution had ever received the exculpatory document. *See Toliver v. McCaughtry* (*Toliver I*), 539 F.3d 766 (7th Cir. 2008). After an evidentiary hearing, the district court granted Mr. Toliver's petition on the ground that trial counsel was ineffective but denied relief on the exculpatory-evidence claim. For the reasons set forth in this opinion, we affirm the judgment of the district court.

# I

## BACKGROUND

### A.  Facts From the State Criminal Trial

We summarize the facts detailed in *Toliver I*, 539 F.3d at 769-70. In 1991, Mr. Toliver and his brother, Oliver Toliver, lived with Commosie Thompson, Jo-Etta Foster

and Tina Rogers. Thompson sold drugs out of the residence and discovered that some drug money was missing. When Thompson told Mr. Toliver about the missing money, Mr. Toliver told Thompson that Rogers took it. Mr. Toliver told his brother Oliver to "strap up"; both men grabbed firearms and went looking for Rogers.[1] Mr. Toliver told Oliver to "strap up" because their house had been "shot up" several weeks after Rogers had moved in and because they suspected that Rogers's boyfriend, whom Mr. Toliver believed to be violent, had been involved in the shooting.[2]

Mr. Toliver and Oliver found Rogers and brought her back to the residence. Rogers denied taking the money, and Mr. Toliver yelled at her. Mr. Toliver then tossed his firearm next to Thompson and ordered him to shoot whomever he thought had stolen the money, including Mr. Toliver himself; Thompson did not respond. Oliver then moved aggressively toward Rogers, but Mr. Toliver pushed him away, warning Oliver to "chill out and sit down."[3] Despite the warning, Oliver shot Rogers in the forehead, killing her.

## B. State Proceedings

Mr. Toliver was convicted by a jury of first-degree intentional homicide as a party to a crime, in violation

---

[1] *Toliver v. McCaughtry* (*Toliver I*), 539 F.3d 766, 769 (7th Cir. 2008) (internal quotation marks omitted).

[2] *Id.* (internal quotation marks omitted).

[3] *Id.* (internal quotation marks omitted).

of sections 940.01 and 939.05 of the Wisconsin Statutes. The court sentenced him to life imprisonment. After appealing and exhausting his state habeas remedies, Mr. Toliver petitioned for a writ of habeas corpus under 28 U.S.C. § 2254, citing ineffective assistance of appellate counsel. The district court conditionally granted Mr. Toliver's petition on that ground.[4] It ordered that Mr. Toliver be released or that the state court permit him to re-file his direct appeal with the assistance of counsel.

The State chose the latter course, and Mr. Toliver, represented by counsel, brought six different claims, including the two we discuss, in state court. In support of his ineffective-assistance claim, Mr. Toliver introduced the affidavits of Angeal Toliver (his wife and the mother of his children) and Harvey Toliver (his cousin), both of whom had offered, but were never called, to testify on Mr. Toliver's behalf that Oliver acted alone. For the exculpatory-evidence claim, Mr. Toliver submitted an affidavit from Cornell Smith, who described an exculpatory letter that he claimed to have sent to Mr. Toliver's prosecutor before the criminal trial. The state courts denied relief.

## C.  The Current Federal Habeas Petition and *Toliver I*

Mr. Toliver then petitioned for federal habeas relief under 28 U.S.C. § 2254. His petition raised seven

---

[4]  *Wisconsin ex rel. Toliver v. McCaughtry*, 72 F. Supp. 2d 960, 979 (E.D. Wis. 1999).

grounds, and the district court denied the petition on each ground. Mr. Toliver appealed each ground, but we focused only on Mr. Toliver's ineffective-assistance and exculpatory-evidence claims.

**1.**

In this current federal habeas proceeding, Mr. Toliver argued that his trial counsel was ineffective for failing to call Angeal to testify and for failing to interview Harvey. He contended that each of these witnesses would have corroborated his assertion that Oliver had acted alone when he shot Rogers.[5]

Angeal stated in her affidavit that she had told Mr. Toliver's counsel of a conversation she had with Jo-Etta Foster, a state witness, in which Foster had told her that Foster saw Mr. Toliver trying to wrestle a gun away from Oliver after the shooting.

Harvey's affidavit described a conversation that he had with the Toliver brothers in which Mr. Toliver reprimanded Oliver, saying that he "shouldn't have killed her because it wasn't any of [Oliver's or Mr. Toliver's] business if this woman . . . did or didn't steal Commosie's dope and money."[6] According to Harvey, Mr. Toliver said that he would not take the blame for Oliver, to which Oliver responded that "he would confess to what he did because

---

[5] *Toliver I*, 539 F.3d at 772-73.

[6] *Id.* at 773 (ellipsis in original) (internal quotation marks omitted).

he wouldn't let his brother, [Mr. Toliver,] take the blame for what he had done."[7] Harvey further testified that he would have been willing to share this information with Mr. Toliver's counsel had he been contacted. Mr. Toliver asserts that this evidence substantiated his contention that he opposed his brother's shooting Rogers.

In addressing Mr. Toliver's ineffective-assistance claim, we observed that, under *Strickland v. Washington*, 466 U.S. 668 (1984), Mr. Toliver had to show both "that his lawyer 'fell below an objective standard of reasonableness' and that there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Toliver I*, 539 F.3d at 773 (quoting *Strickland*, 466 U.S. at 688, 694). Applying the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), to the prejudice prong of *Strickland*, we concluded that the state court's analysis of that prong "fell outside the bounds of objective reasonableness."[8] Angeal's and Harvey's testimony, we ruled, "would have enhanced significantly the chances of the jury's accepting Mr. Toliver's characterization of the facts, thereby affording Mr. Toliver a reasonable probability of a different result at trial."[9] Because the Wisconsin courts did not address whether counsel's performance was objectively unreasonable, we held that AEDPA did not apply to the unreasonable-performance

---

[7]  *Id.* (alteration in original) (internal quotation marks omitted).

[8]  *Id.* at 776.

[9]  *Id.*

prong, and we reviewed de novo the performance issue.[10] After examining the affidavits, we concluded that "[n]othing in the record before us suggests how Angeal Toliver's and Harvey Toliver's testimony could have harmed Mr. Toliver's defense."[11] Surmising that the only reason not to call Angeal and Harvey was the possibility of family bias, we stated that such bias did not outweigh "the probative and corroborative testimony" they would have provided.[12] We also indicated that Mr. Toliver's "counsel could not have made a reasonable strategic decision not to call Harvey without interviewing him in order to evaluate his proposed testimony, his credibility or his demeanor."[13] We remanded, however, for the district court to determine in the first instance whether Mr. Toliver's counsel was deficient when he failed to call Angeal and to interview Harvey.

**2.**

In *Toliver I*, Mr. Toliver also argued that Smith's letter constituted exculpatory evidence that was not, but should have been, disclosed to him prior to trial.[14] In an affidavit, Smith testified that he had sent to the pros-

---

[10] *Id.* at 775.

[11] *Id.*

[12] *Id.*

[13] *Id.*

[14] *Id.* at 771.

ecutor a letter in which he had stated that Mr. Toliver had attempted to dissuade Oliver from killing Rogers and that Oliver acted alone when he shot Rogers. The Wisconsin appellate court concluded that, even assuming that the State had received the letter from Smith and had failed to turn it over to Mr. Toliver, there was not a reasonable probability that the evidence would have led to a different result at trial.[15]

In evaluating these arguments in *Toliver I*, we observed that, in order to establish a prosecutorial violation under *Brady v. Maryland*, 373 U.S. 83 (1963), "a defendant must demonstrate that: (1) the prosecution suppressed evidence; (2) the evidence was favorable to the defense; and (3) the evidence was material to an issue at trial." 539 F.3d at 780 (citing *United States v. Walton*, 217 F.3d 443, 450 (7th Cir. 2000)). Again applying AEDPA, we reasoned that the Wisconsin appellate court applied *Brady* in an objectively unreasonable manner because Smith's testimony could have changed the result of the trial.[16] Because the Wisconsin courts never addressed whether the prosecutor actually received the letter, however, we remanded the issue to the district court for fact-finding.[17]

---

[15] *Id.* at 779.

[16] *Id.* at 780-82.

[17] *Id.* at 782.

**D. Evidentiary Hearing on Remand**

The evidentiary hearing consisted of two parts: whether trial counsel performed deficiently by failing to call Angeal and Harvey, and whether the prosecutor received the letter from Smith.

In support of his claim that his trial counsel was deficient, Mr. Toliver testified that he had told his counsel that Harvey and Angeal would testify for him at trial. Mr. Toliver said that his counsel had replied that neither would be believable because of their family relationship. Counsel interviewed Angeal and placed her on Mr. Toliver's witness list, but never called her to testify. Counsel never interviewed Harvey. At the hearing, Mr. Toliver recalled that he disagreed with his counsel's approach and tried to terminate him several times.

Mr. Toliver's trial counsel, having died in the 1990's, did not testify at the evidentiary hearing. However, the district court considered the record from a state-court pretrial conference in 1992 that supports Mr. Toliver's testimony that he opposed his counsel's inaction. There, Mr. Toliver asked the court for new counsel, complaining that his attorney was not following up on leads that Mr. Toliver had given, including witnesses that counsel had not interviewed. Counsel responded: "As far as I know, I have sent the investigator out to talk with everybody that is closely relevant to the case. But Mr. Toliver and I do see things differently, there is no

question about that."[18] Counsel also acknowledged that he was busy preparing for another upcoming homicide trial.

Mr. Toliver's counsel did not call Angeal or Harvey to testify at the evidentiary hearing. He explained that the substance of their affidavits was not in dispute, and the State agreed that it was not necessary to produce the witnesses.

On the *Brady* issue, Smith testified that, before Mr. Toliver's trial, he sent the lead prosecutor, Mark Williams, a letter explaining how Mr. Toliver tried to stop Oliver from shooting Rogers. Smith said he received a response letter from Williams about a week later stating that Smith's information did not shed light on the case. Smith did not have a copy of either letter. Williams had no recollection of receiving Smith's letter; he testified that, if he had received a letter or written a reply, he would have placed it in the case file, which contained no such letters. He acknowledged, however, that the communication could have been misplaced.

### E.  The District Court's Ruling

On remand, the district court granted relief on the ineffective-assistance claim. It concluded that counsel's decision not to call Harvey would not be afforded the normal presumption of validity because the decision was uninformed—it was undisputed that counsel had not even interviewed Harvey. As for Angeal, the district

---

[18] R.110-1 at 12-13.

court noted Mr. Toliver's testimony that family bias was counsel's only reason for not calling Angeal and that *Toliver I* had concluded that possible bias alone is not a legitimate reason to refuse to call a corroborating witness. Therefore, the district court concluded that counsel's performance was deficient.

On the exculpatory-evidence issue, the court acknowledged the conflicting, credible testimony provided by both Williams and Smith. However, because Mr. Toliver bore the burden of establishing that the letter was received, the court concluded that Mr. Toliver had not proved that Williams had received the letter from Smith.

## II

## DISCUSSION

### A. Habeas Corpus Standards of Review

We review the district court's grant of habeas relief de novo.[19] If a state court has adjudicated a petitioner's claim on the merits, habeas relief may be granted only if that state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or if it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

---

[19] *Etherly v. Davis*, 619 F.3d 654, 660 (7th Cir. 2010); *Northern v. Boatwright*, 594 F.3d 555, 559 (7th Cir. 2010).

"When no state court has squarely addressed the merits of a habeas claim, however, we review the claim under the pre-AEDPA standard of 28 U.S.C. § 2243, under which we 'dispose of the matter as law and justice require.'" *Morales v. Johnson*, 659 F.3d 588, 599 (7th Cir. 2011) (internal quotation marks omitted).

## B.  Evidentiary Hearings in Habeas Proceedings

Before reaching the information uncovered at the evidentiary hearing, we must address the State's contention that the hearing itself was impermissible. The State argues, in light of *Cullen v. Pinholster*, 131 S. Ct. 1388 (2011), that our remand for an evidentiary hearing on the ineffective-assistance issue was improper. In *Pinholster*, the Supreme Court explained "that evidence introduced in federal court has no bearing on § 2254(d)(1) review." *Id.* at 1400. Instead, it

> h[e]ld that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. Section 2254(d)(1) refers, in the past tense, to a state-court adjudication that "resulted in" a decision that was contrary to, or "involved" an unreasonable application of, established law. This backward-looking language requires an examination of the state-court decision at the time it was made. It follows that the record under review is limited to the record in existence at that same time *i.e.*, the record before the state court.

131 S. Ct. at 1398; *see also Price v. Thurmer*, 637 F.3d 831, 837 (7th Cir. 2011) ("In light of [*Pinholster*] we should not have ordered such a hearing insofar as Price was seeking relief under section 2254(d)(1).").

*Pinholster* does not apply to Mr. Toliver's case because the Wisconsin courts never addressed whether Mr. Toliver's counsel performed deficiently. *Pinholster* prohibits federal evidentiary hearings only on inquiries that are subject to AEDPA—that is, inquiries that the state courts have addressed. Accordingly, the district court properly received evidence on the unaddressed *Strickland* prong. *See Wiggins v. Smith*, 539 U.S. 510, 534 (2003). The same conclusion is true for the hearing on whether the prosecutor received Smith's letter. The Wisconsin courts passed over that part of the inquiry and went directly to prejudice. Therefore, *Pinholster*'s restriction on evidentiary hearings under § 2254(d)(1) does not apply to Mr. Toliver.

*Pinholster* itself anticipates this distinction in its discussion of § 2254(e)(2), which provides for federal evidentiary hearings when § 2254(d)(1) does not apply:

> Section 2254(e)(2) continues to have force where § 2254(d)(1) does not bar federal habeas relief. For example, not all federal habeas claims by state prisoners fall within the scope of § 2254(d), which applies only to claims "adjudicated on the merits in State court proceedings." At a minimum, therefore, § 2254(e)(2) still restricts the discretion of federal habeas courts to consider new evidence

> when deciding claims that were not adjudicated
> on the merits in state court.

*Pinholster*, 131 S. Ct. at 1401; *see James v. Ryan*, 679 F.3d 780, 803-04 (9th Cir. 2012); *Han Tak Lee v. Glunt*, 667 F.3d 397, 405 (3d Cir. 2012); *Robinson v. Howes*, 663 F.3d 819, 823 (6th Cir. 2011).

An evidentiary hearing under § 2254(e)(2) was proper in this case because Mr. Toliver diligently tried to develop the facts of his two claims in state court. In his state appeal, the state trial court, which heard the appeal under a provision of Wisconsin law, *see Toliver I*, 539 F.3d at 771 & n.4, denied Mr. Toliver's request for an evidentiary hearing. Instead, the trial court relied on the record from Mr. Toliver's first appeal in 1993, even though Mr. Toliver had proceeded without counsel then. That record contained Angeal's, Harvey's and Smith's affidavits, but no in-court testimony. Mr. Toliver complained about this issue in his subsequent appeal to the Wisconsin appellate court. Our colleagues on that court acknowledged that, with respect to the issue of whether the State had received the letter from Smith, the record was not developed, and they indicated that an evidentiary hearing would be necessary to resolve the issue. There was nothing else Mr. Toliver could have done to develop the factual record. Therefore, the federal evidentiary hearing was proper under § 2254. *Williams v. Taylor*, 529 U.S. 420, 437 (2000) ("If there has been no lack of diligence at the relevant stages in the state proceedings, the prisoner has not 'failed to develop' the facts under § 2254(e)(2)'s opening clause, and he will be

excused from showing compliance with the balance of the subsection's requirements."); *see also Dalton v. Battaglia*, 402 F.3d 729, 737 (7th Cir. 2005); *Richardson v. Briley*, 401 F.3d 794, 800 (7th Cir. 2005).

## C. Ineffective Assistance of Counsel Claim

The State advances two arguments with respect to why the district court should not have issued the writ on the basis of ineffective assistance of counsel. First, it asks us to reconsider our determination in *Toliver I* that the Wisconsin court unreasonably found no prejudice to Mr. Toliver. Second, the State contends that, on remand, Mr. Toliver failed to meet his burden of showing that counsel performed deficiently.

### 1.

We first address *Strickland*'s prejudice requirement and the State's contention that we should revisit our earlier holding on that issue. In *Toliver I*, we applied AEDPA deference to the Wisconsin appellate court's decision on the prejudice prong because the state courts had addressed the issue, and we concluded that the Wisconsin courts had applied unreasonably and incorrectly federal law. The State contends, once again, that the Wisconsin appellate court's decision was within the bounds of objective reasonableness. It relies on *Harrington v. Richter*, 131 S. Ct. 770 (2011), decided after *Toliver I*, which confirmed the limited scope of AEDPA review:

As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Harrington*, 131 S. Ct. at 786-87. The Court explained that the court of appeals had not applied AEDPA properly when it engaged in de novo review and determined that petitioner's counsel had been constitutionally ineffective.

We decline to revisit our earlier prejudice ruling because the law-of-the-case doctrine applies to that determination. This doctrine advises against revisiting earlier rulings "absent a compelling reason, such as manifest error or a change in the law." *Minch v. City of Chicago*, 486 F.3d 294, 301 (7th Cir. 2007). *Harrington* did not signify a change in the law; it merely clarified the AEDPA standard and reversed the judgment of the court of appeals for its de novo review of a *Strickland* claim. In *Toliver I*, we identified and applied the proper deferential standard under AEDPA, writing that "a habeas petitioner must show that the state court's application of *Strickland* was both incorrect and unreasonable—that is, 'lying well outside the boundaries of permissible differences of opinion.'" *Toliver I*, 539 F.3d at 774 (quoting *Raygoza v. Hulick*, 474 F.3d 958, 963 (7th Cir. 2007)). *Harrington* joins an unbroken line of cases interpreting AEDPA, and our decision in *Toliver I* falls comfortably within

that line. Accordingly, there is no compelling reason to revisit our previous determination on this issue, and we decline to do so.

**2.**

Next we turn to the performance prong of *Strickland*, which requires us to determine whether, considering the new evidence produced on remand, counsel fell below an objective standard of reasonableness. In light of trial counsel's death, the parties agree that the district court gained little new information from the hearing. Mr. Toliver's testimony, which the district court accepted as true, confirmed that counsel did not call the two witnesses that Mr. Toliver desired because counsel thought the jury would disbelieve them based on their family relationship. The transcript from the 1992 pre-trial conference confirmed the difference of opinion between Mr. Toliver and his attorney about securing additional witnesses. We also now know that Mr. Toliver's counsel was busy preparing for another homicide trial that was set to start soon after Mr. Toliver's trial. For its part, the State could not shed any further light on counsel's decision not to call Angeal and Harvey because it could not locate counsel's files or any similar information. Nonetheless, we can assess counsel's performance without testimony from deceased trial counsel.[20]

---

[20] *See Williams v. Anderson*, 460 F.3d 789, 803-04 (6th Cir. 2006); *Rolan v. Vaughn*, 445 F.3d 671, 676, 682 (3d Cir. 2006); *see also* (continued...)

"So long as an attorney articulates a strategic reason for a decision that was sound at the time it was made, the decision generally cannot support a claim of ineffective assistance of counsel." *Yu Tian Li v. United States*, 648 F.3d 524, 528 (7th Cir. 2011). However, we can find nothing in the record to suggest that Mr. Toliver's attorney could have been making a sound strategic choice when he decided not to call Angeal and Harvey merely because of the family relationship. We do not assess the potential testimony of Angeal and Harvey in the abstract, but rather in the context of the theories presented at trial.[21]

---

[20] (...continued)

*White v. Roper*, 416 F.3d 728, 731-32 (8th Cir. 2005) (considering testimony of the "[s]econd chair" trial counsel in assessing the performance of lead trial counsel who had died after the trial); *cf. Lewis v. Horn*, 581 F.3d 92, 115 (3d Cir. 2009) ("[W]e must first determine the nature and extent of the investigation that took place as well as the nature and extent of the communications that occurred . . . . This task is made difficult by the fact that Lewis's trial counsel is deceased[] . . . ."); *Callahan v. Campbell*, 427 F.3d 897, 933 (11th Cir. 2005) (presuming that counsel, who had died, exercised reasonable professional judgment where there was "no evidence of what he did to prepare").

[21] *See Atkins v. Zenk*, 667 F.3d 939, 945-46 (7th Cir. 2012); *Raygoza v. Hulick*, 474 F.3d 958, 963 (7th Cir. 2007) ("[G]eneralities fall away when we are dealing with an 'n' of one: it is the facts of the particular case, and the particular alibi defense, that matter."); *Canaan v. McBride*, 395 F.3d 376, 385 (7th Cir. 2005) ("Even apart from these general standards, the conduct of Canaan's counsel

(continued...)

In the context of this case, the testimony of Angeal and Harvey was crucial. The State presented three witnesses who testified that Mr. Toliver instructed Oliver to shoot Rogers. Mr. Toliver's defense was that he had *not* instructed Oliver to shoot her and that he had commented *after* the shooting that Oliver "shot the bitch."[22] Angeal and Harvey were the only two witnesses that would have corroborated his theory of defense. Angeal's testimony also would have helped to impeach one of the State's witnesses. "[I]n a swearing match" between the two sides, counsel's failure to call two useful, corroborating witnesses, despite the family relationship, constitutes deficient performance. *See Goodman v. Bertrand*, 467 F.3d 1022, 1030 (7th Cir. 2006) (indicating that the testimony of witnesses, who would corroborate the defendant's account, was "a crucial aspect of [the] defense"). This conclusion is all the more true where counsel did not call *any* defense witnesses at trial besides Mr. Toliver.

## D. *Brady* Claim

Mr. Toliver wishes to appeal the district court's decision denying relief on his claim of undisclosed exculpatory evidence. Although he has not filed a cross-appeal, he may proceed because he does not seek to enlarge his

---

[21] (...continued)
was deficient when viewed in light of the facts and circumstances of his case.").

[22] *Toliver I*, 539 F.3d at 772 (internal quotation marks omitted).

judgment. *See El Paso Natural Gas Co. v. Neztsosie*, 526 U.S. 473, 479 (1999) ("Absent a cross-appeal, an appellee may urge in support of a decree any matter appearing in the record, although his argument may involve an attack upon the reasoning of the lower court, but may not attack the decree with a view either to enlarging his own rights thereunder or of lessening the rights of his adversary." (internal quotation marks omitted)). Although the argument has been presented adequately, it fails on its merits.

Mr. Toliver disputes the district court's finding that he failed to meet his burden of showing that the State received the letter from Smith. Because the evidence at the hearing was in equipoise, the district court's finding that Mr. Toliver did not meet his burden was not clearly erroneous. *See Newell v. Hanks*, 335 F.3d 629, 632-33 (7th Cir. 2003) (holding that the district court did not commit clear error when it determined that petitioner had not established a *Brady* violation based on "ambiguous" evidence regarding suppression).

## Conclusion

Because the evidentiary hearing before the district court was proper, and because Mr. Toliver showed that, in light of the circumstances of his case, his counsel's decision not to call two key witnesses was unreasonable, we affirm the judgment of the district court.

AFFIRMED