In the
United States Court of Appeals
For the Seventh Circuit

No. 99-3560

PHILIP I. WARREN,

Petitioner-Appellant,

v.

RICHLAND COUNTY CIRCUIT COURT
and JON LITSCHER, Secretary, Wisconsin
Department of Corrections,

Respondents-Appellees.

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 99-C-234--Barbara B. Crabb, Judge.

Argued March 30, 2000--Decided August 4, 2000

Before Bauer, Diane P. Wood, and Williams, Circuit Judges.

Bauer, Circuit Judge. Philip Warren petitions for a writ of habeas corpus pursuant to 28 U.S.C. sec.2254. He claims that the Wisconsin Circuit Court and Department of Corrections violated his Fourteenth Amendment right to due process when it revoked his probation. The District Court denied Warren's petition for habeas relief. Warren v. Richland County Circuit Court, et al., No. 99-C-234 (W.D.Wis. Sept. 15, 1999). We affirm.

I. BACKGROUND

Warren does not challenge the Wisconsin state courts' statements of fact. Those facts are entitled to a presumption of correctness and we adopt them here. Kines v. Godinez, 7 F.3d 674, 677 (7th Cir. 1993), cert. denied, 510 U.S. 1200, 114 S.Ct. 1314, 127 L.Ed.2d 664 (1994).

Philip Warren was charged with two counts of sexually assaulting the ten year old daughter of his former live-in girlfriend. The girl testified at the preliminary hearing that Warren touched her "in the wrong places" while she and her mother were living with him. She explained that Warren touched her breasts and crotch on two occasions and that the touching was not "like

tickling." Officer Virginia Cupp also testified at the preliminary hearing, relating statements made by the child during an interview with the investigating authorities. The court found probable cause and bound Warren over for trial.

In a deal reached with the prosecutor, Warren entered an Alford/1 plea to one of the charges against him, and the State dismissed the remaining charge and recommend that Warren be placed on probation. Before accepting the plea, the court reminded Warren of the important rights he was waiving, questioned defense counsel as to the voluntariness of the plea and cautioned Warren that his probation would be revoked if he failed to complete the terms of his probation. Satisfied that there was strong evidence of guilt despite Warren's claims of innocence, the court then accepted the Alford plea and entered a judgment of conviction against Warren for sexual assault of a child.

The court sentenced Warren to five years in prison, but stayed that term and placed Warren on eight years probation. One of the court-ordered conditions of probation was that Warren cooperate with and complete any counseling ordered by the Department of Corrections. Warren did so for five years, participating on three separate occasions in sex offender treatment programs. He attended every session and participated in the group discussions. But, he consistently refused during his counseling sessions to admit he had committed a sexual offense, a requirement for rehabilitation and successful completion of the program. Warren was repeatedly warned of the implications of his behavior, including the risk of revocation, yet he persisted and five years after he began probation, the Department of Corrections issued a notice of violation. After a hearing, Warren's probation was revoked and he was ordered to begin serving his five year sentence.

Warren sought review of the Department's revocation decision by petitioning the circuit court for a writ of certiorari pursuant to Wis. Stat. sec.781.01. He argued that the Department's requirement that he admit his guilt during sex offender counseling violated his due process because it was inconsistent with the State's acceptance of his Alford plea in the criminal proceeding. The court found no merit to Warren's argument and affirmed the Department's decision to revoke Warren's probation. The Court of Appeals affirmed and the Wisconsin Supreme Court agreed. See State ex rel. Warren, 211 Wis.2d 710, 566 N.W.2d 173 (1997); State ex rel. Warren v. Schwartz, 219 Wis.2d 615, 579 N.W.2d 698 (1998). Following an unsuccessful petition for a writ of

habeas corpus to the U.S. District Court for the Western District of Wisconsin, Warren v. Richland County Circuit Court, et al., No. 99-C-234 (W.D.Wis. Sept. 15, 1999), Warren appealed to us, claiming that his Alford plea was constitutionally defective because the court did not advise him that he would not be able to maintain his claim of innocence during counseling and that his ignorance of that fact rendered his plea unknowing and involuntary. He also claims that the State breached the plea agreement by seeking to imprison him for his failure to admit guilt during the sex offender treatment counseling. We affirm the District Court.

## II.  DISCUSSION

Federal courts may grant a writ of habeas corpus when a person is held in custody under a state court judgment in violation of the United States Constitution. 28 U.S.C. sec.2254; Kavanagh v. Berge, 73 F.3d 733, 735 (7th Cir. 1996). In order to merit federal habeas relief, a petitioner must establish that the state court proceedings resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law as determined by the United States Supreme Court. 28 U.S.C. sec.2254(d)(1). See also Lindh v. Murphy, 96 F.3d 856 (7th Cir. 1996) (en banc) rev'd on other grounds 521 U.S. 320 (1997). Otherwise, a petitioner must demonstrate that the state court decision was based on an unreasonable determination of the facts, given the evidence presented during the state court proceedings. 28 U.S.C. sec.2254(d)(2). Where, as here, the District Court denied habeas relief, we review the District Court's findings of fact under a clearly erroneous standard and its legal conclusions de novo. Neumann v. Jordan, 84 F.3d 985, 987 (7th Cir. 1996).

### A.  Due Process Challenge

Due process requires that a trial court inform the defendant of the "direct consequences" of his plea. Brady v. United States, 397 U.S. 742, 755 (1970). Warren argues that due process was denied him because he was not informed at the time he entered his plea that the State would not permit him to continue to maintain his innocence during mandatory sex counseling sessions. He maintains that the court's failure to so inform him rendered his plea unknowing and involuntary.

Brady defines a "voluntary" plea as:

A plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the

court, prosecutor, or his own counsel, . . . unless induced by threats (or promises to discontinue harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes).

Id. at 755 (citation omitted). The Wisconsin Supreme Court, analyzing Wisconsin cases, determined that Warren's plea met this definition. It found that there was no coercion or fraudulent inducement and that the trial court did not need to inform Warren that his probation could be revoked if he did not admit his guilt because that consequence was only a "collateral" consequence of his plea. 219 Wis. 615, 637-38, 579 N.W.2d 698, 708-09.

The Wisconsin court's finding is in accord with federal law which also holds that a defendant is entitled to be informed of the direct, but not collateral, consequences of his plea. See e.g., United States v. Suter, 755 F.2d 523, 525 (7th Cir. 1985). "Direct consequences are the 'immediate, and automatic consequences of the guilty plea.'" United States v. Jordan, 870 F.2d 1310, 1317 (7th Cir. 1989) (citation omitted). The possibility that Warren's probation might be revoked because he refused to admit to sexual contact with a child does not meet this test. As the Supreme Court of Wisconsin said, the chance of revocation was:

(1) not definite, since some defendants who are unwilling to admit their guilt at the plea stage might conceivably be amenable to treatment at the rehabilitation stage; (2) not immediate, either in time or impact, since the revocation was contingent upon intervening circumstances; and (3) not automatic, since the ability to abide by the conditions or probation was well within Warren's control.

219 Wis.2d at 638. Having analyzed the same factors in its inquiry that this court would examine to determine whether Warren's right to due process was violated, and having reached the same result, we cannot say that the Wisconsin court's determination was "contrary to, or involved an unreasonable application of clearly established federal law" or was "based on an unreasonable determination of the facts." 28 U.S.C. sec.2254(d).

Warren takes umbrage with the court's ruling that the revocation of his probation for failure to admit his guilt during counseling was a collateral consequence. He argues alternatively

that it is a "direct" consequence according to the Brady definition of voluntary, ("Brady requires that a defendant be advised of the 'direct' consequences of his plea, which are defined as 'including the actual value of any commitments made to him by the court, prosecutor, or his own counsel."), and that a plea is not voluntary unless it is made with full awareness "of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel." Under either formulation, the argument is based upon the representations made to him by his counsel before sentencing that he would be able to maintain his innocence, which turned out to be, according to Warren, "worthless."

During the post-conviction hearing on Warren's motion to withdraw his plea, Warren's attorney testified that he told Warren that he would be allowed to continue to assert his innocence after sentencing and it was his own personal belief that the State had implicitly promised, because it accepted the Alford plea, that Warren could maintain his innocence without consequence. He also told the court that it never occurred to him that Warren might have to admit guilt during probationary counseling or face revocation and, therefore, he never discussed that with Warren.

By resting his fate solely on what he believes are the uncontradicted assurances of his counsel, Warren glosses over several other important facts. First, at the time he entered his Alford plea, the trial court advised Warren:

In the event that the Court grants probation, probable or very likely one item that is going to be ordered is counseling, and you will be expected to enter into good faith counseling as part of the term of probation, and that carries with it--I realize that you, by making your plea of no contest, are not admitting anything in court, but you still would have an obligation to enter into counseling in good faith with the counselor, psychiatrist, or doctor, whoever, so that's something you should realize.

And, second, at the sentencing hearing, the trial court ordered that Warren attend any counseling sessions ordered by the department and "that he follow all the recommendations that any study or counselor comes up with." Although these are not definite statements by the court that Warren would have to acknowledge responsibility for his conduct during counseling, we believe that these statements, combined with the fact that Warren was counseled at the sentencing hearing by a psychiatrist who specialized in sex counseling, should have alerted him that the possibility

existed. Furthermore, Warren was repeatedly advised by his probation officers that his refusal to acknowledge inappropriate sexual contact with a child during therapy might lead to revocation.

Considering all of this other evidence, we cannot agree with Warren that he had no information contrary to his attorney's representations. For the reasons stated above, even if we consider the attorney's advice as a component of what makes up a "direct" consequence (which we do not), we believe that the possibility of probation revocation for failure to admit guilt during mandatory counseling is a collateral consequence of which Warren need not be informed. And, even after considering his attorney's statements to him as a component of the Brady definition of voluntary, we believe the Wisconsin Supreme Court correctly concluded that Warren's plea was knowing and voluntary. As its decision was a correct application of the legal principles established in Brady, we find that Warren is not entitled to the habeas relief he seeks. The judgment of the District Court, denying the petition for a writ of habeas corpus, is therefore affirmed.

### B.  Breach Of The Plea Agreement

When "a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." Santobello v. New York, 404 U.S. 257, 262 (1971). Warren believes that the State breached the Alford plea agreement by imprisoning him for refusing to admit his guilt during counseling. However, as his argument rests merely upon his own subjective belief and the post-conviction testimony of his trial lawyer, and not upon any action or representation of the prosecutor or the court, his argument is unpersuasive.

If a prosecutor breaches an explicit promise of an executed plea agreement, the defendant's plea cannot stand because it was entered on a false premise. Mabry v. Johnson, 467 U.S. 504, 509 (1984). There is, however, nothing in the record before us which suggests that the prosecutor or the court promised Warren that he would not have to admit guilt at the counseling sessions which were ordered as a condition of probation. The evidence shows that the prosecutor agreed to recommend probation and he did so at the sentencing hearing. There was, then, no breach of an explicit promise.

Warren argues that the prosecutor impliedly

promised, by agreeing to let him enter an Alford plea, that he would be allowed to continue asserting his innocence and that the court, by accepting the plea, promised the same. As the Wisconsin Supreme Court said, "Warren's argument is based upon the faulty premise that an Alford plea is a promise that a defendant will never have to admit his guilt." 219 Wis.2d at 644. We agree, but note that the Supreme Court has never addressed the issue. Therefore, Warren has not met his burden under 28 U.S.C. sec.2254 of showing that the state court's judgment is contrary to or involves an unreasonable application of federal law as defined by a decision of the United States Supreme Court. The judgment of the District Court, denying the petition for habeas corpus, is therefore affirmed.

III.  CONCLUSION

Warren believes that the acceptance of an Alford plea is an assurance that a defendant will not have to admit guilt during either conviction or punishment. He is wrong. He can maintain his innocence at the drug store, the grocery store and any other public place he desires. But, when in the private setting of sex offender counseling that is ordered as a condition of probation, and his admission is necessary for rehabilitation, he must admit responsibility for his conduct. We do not worry that our ruling will force insincere admissions of guilt from defendants during counseling as there are trained counselors evaluating the admissions and they will be able to differentiate between the sincere and the insincere. Nor do we believe that our ruling forces innocent defendants to confess to crimes they did not commit, as there must be a sufficient indication of the defendant's guilt before an Alford plea is accepted. We believe that here, Warren got the bargain to which he agreed.

For the foregoing reasons, the judgment of the District Court is affirmed.

AFFIRMED.


/1 An Alford plea allows the defendant to enter a guilty plea while maintaining his innocence, a practice approved by the Supreme Court in North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).