In the

# United States Court of Appeals
## For the Seventh Circuit

———————

No. 06-3322

ALBERT M. VIRSNIEKS,

*Petitioner-Appellant*,

*v.*

JUDY P. SMITH, Warden,

*Respondent-Appellee*.

———————

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 03 C 670—**Aaron E. Goodstein,** *Magistrate Judge*.

———————

ARGUED NOVEMBER 2, 2007—DECIDED APRIL 2, 2008

———————

Before EASTERBROOK, *Chief Judge*, and POSNER and RIPPLE, *Circuit Judges*.

RIPPLE, *Circuit Judge*. Albert M. Virsnieks pleaded *nolo contendere* to one count of burglary with intent to commit a felony, in violation of section 943.10(1)(a) of the Wisconsin Statutes, in exchange for the dismissal of one count of second-degree sexual assault, *see* Wis. Stat. § 940.225(2)(a). A Wisconsin trial court sentenced Mr. Virsnieks to the

statutory maximum of 10 years' imprisonment and also ordered him to register under Wisconsin's sexual offender statute. *See id.* § 973.048(1m). After exhausting his state remedies and while serving his sentence of imprisonment, Mr. Virsnieks filed in the district court a pro se petition for a writ of habeas corpus under 28 U.S.C. § 2254. The district court denied his petition. Mr. Virsnieks timely filed a notice of appeal and obtained a certificate of appealability.

For the reasons set forth in this opinion, we affirm the judgment of the district court.

# I

## BACKGROUND

### A.

On February 19, 1999, Mr. Virsnieks entered the home of Joanne M. Buechel, with whom he previously had been involved romantically. After Buechel discovered Mr. Virsnieks in her home, an argument ensued; he allegedly engaged in forcible sexual intercourse with her. The criminal complaint filed against Mr. Virsnieks alleged both burglary and second-degree sexual assault. The burglary count stated that Mr. Virsnieks had entered Buechel's home with intent to commit a felony, but it did not identify explicitly the felony as second-degree sexual assault. After a preliminary hearing, the Wisconsin trial court determined that probable cause existed to prosecute Mr. Virsnieks for both charges. The State then filed an information charging burglary and second-degree sexual assault; the information did not state explicitly that the burglary charge was predicated on the sexual assault.

Mr. Virsnieks and the State subsequently reached a plea agreement. In exchange for a no contest plea on the burglary charge, the State agreed to drop the second-degree sexual assault charge. The plea agreement provided that "[n]o promises have been made regarding sentencing recommendations to be made in this case. Both sides are free to argue as to the sentence. Both parties agree that a pre-sentence investigation should be ordered." R.8, Ex. I.

The Wisconsin trial court held a plea hearing. The court explained the burglary charge to which Mr. Virsnieks had agreed to plead guilty: "What the State would have to prove at a trial is that you intentionally entered a dwelling, that the dwelling belonged to someone else, that you did not have the person's consent to enter into that residence, that you were aware that you did not have permission to enter into that residence, and that you intended to commit a felony when you entered into that residence." R.8, Ex. Q at 7-8. Mr. Virsnieks indicated to the court that he understood the elements of burglary and that he had discussed the case with counsel. During the plea colloquy, the trial court did not make explicit that the predicate felony for the burglary charge was sexual assault. The parties agreed to use the criminal complaint and Buechel's preliminary hearing testimony as the factual basis for Mr. Virsnieks' plea. The sexual assault featured prominently in Buechel's preliminary hearing testimony.

Prior to the sentencing hearing, Mr. Virsnieks submitted to a court-ordered psychosexual evaluation that concluded that he was sexually assaultive. Mr. Virsnieks also obtained an expert, Dr. Michael Nelson, to conduct a psychological evaluation. Dr. Nelson opined that, in terms of dangerousness and risk of recidivism, Mr. Virsnieks was at the mean of the incarcerated population and just outside the range

for sexual predators. The pre-sentence report ("PSR") contained numerous references to Mr. Virsnieks' sexual assault of Buechel during the burglary, and it recommended that the court order him to register as a sexual offender.

At the sentencing hearing, Mr. Virsnieks presented the testimony of Dr. Nelson. After both parties had examined the expert, the trial court posed several questions. The trial court asked: "You do understand, that as far as the instant offense here, the burglary is connected, and there was a sexual assault charge connected with it, and the nature of this charge is burglary with intent to commit a felony, i.e., a sexual assault; correct?" R.8, Ex. R at 25-26. In addition, the trial court noted: "[T]he charge he pled to was burglary with intent to commit a felony, which was a rape, a sexual assault. I think that is my understanding. Counsel, correct me if I am wrong." *Id.* There is no indication in the record that Mr. Virsnieks or his attorney objected to the trial judge's understanding of the case. In his statement to the trial court, Mr. Virsnieks apologized for entering Buechel's home, but he did not address the sexual assault allegations.

In light of the alleged sexual assault on Buechel during the burglary, the PSR recommended, and the State urged, that the trial court exercise its discretion under Wisconsin law[1] to order Mr. Virsnieks to register as a sex offender.[2]

---

[1] Wisconsin law provides for automatic registration for defendants convicted of certain sexual offenses. *See* Wis. Stat. § 301.45(1)(g). Wisconsin law also gives trial courts the discretion to order defendants convicted of burglary to register if "the court determines that the underlying conduct was sexually motivated . . . and that it would be in the interest of public

(continued...)

Both Mr. Virsnieks and his counsel stated that they had read the PSR. The Wisconsin trial court gave Mr. Virsnieks' counsel an opportunity to address any factual inaccuracies in the PSR; counsel declined. After hearing the testimony and both parties' arguments, the court sentenced Mr. Virsnieks to 10 years' imprisonment and ordered him to register as a sex offender.

### B.

After sentencing, Mr. Virsnieks, with the assistance of his appellate counsel, filed a post-conviction motion in the trial court.[3] He submitted that, under Wisconsin law, his plea was not knowing or voluntary because he had not understood that the sexual assault was the felony underlying the burglary charge and thus had not realized that he could be ordered to register as a sex offender. Mr. Virsnieks claimed that his trial counsel had told him that the predicate felony

---

[1] (...continued)
protection to have the person report." *Id.* § 973.048(1m). A "sexually motivated" act is defined as an act that "is for the actor's sexual arousal or gratification or for the sexual humiliation or degradation of the victim." *Id.* § 980.01(5).

[2] The trial court and the pre-sentence report noted that Mr. Virsnieks previously had served prison time for assaulting his then-wife and forcing her to perform fellatio on him. In addition, Buechel claimed that, prior to this incident, Mr. Virsnieks had drugged her and, while she was unconscious, had taken photographs of her and had engaged in sexual activity.

[3] Wisconsin law allows a convicted defendant to file a post-conviction motion in the trial court as part of his or her direct appeal. *See* Wis. Stat. § 974.02.

was "use of the facilities."[4] Notably, during this hearing, his new counsel explicitly stated that Mr. Virsnieks' claim was not based on ineffective assistance of trial counsel.

After listening to Mr. Virsnieks' testimony and the arguments presented by both parties, the trial court denied the motion for post-conviction relief. It found Mr. Virsnieks' testimony "incredible." R.8, Ex. S at 24. In the court's view, the fact that Mr. Virsnieks underwent a court-ordered psychosexual evaluation prior to sentencing should have raised a "red flag" about the significance of the sexual assault. *Id.*, Ex. S at 22. The court determined that Mr. Virsnieks' plea had been knowing based on the information contained in the complaint and the PSR, which both Mr. Virsnieks and his trial counsel had stated that they had read. The court also noted that Mr. Virsnieks had failed to object during the sentencing hearing at which the sexual assault was mentioned repeatedly and that he had declined the opportunity to refute the facts corresponding to the underlying sexual assault, despite having agreed that the criminal complaint and Buechel's preliminary hearing testimony would be used as the factual basis for the plea.

After the trial court's denial of the post-conviction motion, Mr. Virsnieks, with the assistance of counsel, appealed to the Court of Appeals of Wisconsin. He raised two arguments; both centered on his claim of ignorance that the predicate felony for the burglary charge was sexual assault. None of his arguments were based on federal law, and he did not claim ineffective assistance of trial counsel. The court of appeals affirmed the conviction on state law grounds. The Supreme Court of Wisconsin later denied Mr.

---

[4] "Use of the facilities" is not a felony under Wisconsin law.

Virsnieks' petition, which also raised only state law
arguments.

Having exhausted his direct appeals, Mr. Virsnieks
turned to his state habeas remedies. He filed a pro se
motion for post-conviction relief and raised the following
claims: (1) his plea was not knowing and voluntary because
he was not apprised that the predicate felony was sexual
assault; (2) the factual basis for his plea was insufficient
because the sexual assault count had been dismissed; (3)
based on the factual predicate for his guilty plea, the trial
court could not impose the sentence that he received; (4)
the State violated its plea agreement and the trial court
erred by receiving arguments based on the dismissed
sexual assault count; (5) his trial counsel was ineffective
because he did not object to the prosecutor's or the victim's
statements at sentencing about the sexual assault, because
he did not inform Mr. Virsnieks of the predicate felony and
because he did not allow Mr. Virsnieks to speak on his own
behalf; (6) his appellate counsel was ineffective for not
raising the ineffectiveness of trial counsel. The state trial
court denied the motion; it explained that these issues
already had been addressed adequately in Mr. Virsnieks'
previous post-conviction motions and appeals.

Mr. Virsnieks then raised the same issues in an appeal to
the Court of Appeals of Wisconsin. The appellate court
determined that all of the issues, except for the ineffective
assistance of trial and appellate counsel claims, were
procedurally barred. As to the ineffective assistance of trial
counsel claim, the court determined that, on direct appeal,
Mr. Virsnieks, through his own testimony and through his
appellate counsel's representations to the court, explicitly
had disclaimed that his trial counsel was ineffective. The
appellate court also rejected his ineffective assistance of

appellate counsel claim because it was premised on an argument that the court already had rejected—namely, that he had not been apprised of the underlying felony. The Supreme Court of Wisconsin denied Mr. Virsnieks' petition for review, which raised the same arguments.

Mr. Virsnieks subsequently filed a pro se petition for a writ of habeas corpus in the United States District Court for the Eastern District of Wisconsin. Mr. Virsnieks raised three arguments: (1) that his plea was not voluntary and intelligent because he had not known that the sexual assault was the predicate felony; (2) that his trial counsel was ineffective for having failed to inform him that the State was relying on the sexual assault as the predicate felony; and (3) that his appellate counsel was ineffective for waiving any potential ineffective assistance of trial counsel claim.

The district court denied Mr. Virsnieks' petition. With respect to the voluntariness of his plea, the district court held that the record demonstrates that Mr. Virsnieks' plea had been entered freely and knowingly. The court noted that, to prove burglary under Wisconsin law, the State need not prove the specific felony that a defendant intended to commit. The court read Mr. Virsnieks' petition as possibly raising an *Apprendi* violation. The court rejected this argument because any finding by the sentencing court that the underlying felony was a sexual assault did not increase Mr. Virsnieks' sentence beyond the maximum statutorily authorized sentence. Mr. Virsnieks did not argue in his habeas petition that the order to register as a sex offender was beyond the maximum statutorily authorized sentence.

The district court also rejected Mr. Virsnieks' ineffective assistance of counsel claims. With respect to the claim regarding his trial counsel, the court determined that,

given the totality of the circumstances, it was entirely reasonable for trial counsel to have assumed that Mr. Virsnieks was aware that sexual assault was the underlying felony. The district court also ruled that the Court of Appeals of Wisconsin's decision that Mr. Virsnieks was judicially estopped from raising the claim of ineffective assistance of trial counsel by not raising it in the post-conviction hearing was an adequate and independent state law ground. Finally, the court determined that, because it already had determined that his trial counsel was not ineffective, his appellate counsel could not have been ineffective for having declined to make the argument.

Mr. Virsnieks timely filed a notice of appeal and sought a certificate of appealability ("COA") on all three issues that he had raised before the district court. In his request for a COA, he alerted the district court for the first time that he had been ordered to register as a sex offender. The district court explained that, "[b]ased on this additional fact, only now presented, jurists of reason could disagree as to whether the government was required to indicate in the information that sexual assault was the specific crime that Virsnieks had intended to commit when he entered the residence." R.31 at 4. Accordingly, the court granted Mr. Virsnieks' request for a COA.[5]

---

[5] Mr. Virsnieks was scheduled to be paroled by the Wisconsin Department of Correction on October 17, 2006. Six days prior to his parole date, however, the State of Wisconsin initiated proceedings to have Mr. Virsnieks civilly committed indefinitely as a sexually violent person. *See* Wis. Stat. § 980 et seq. These proceedings are pending, and Mr. Virsnieks is presently in the physical custody of the Wisconsin Department of Health and

(continued...)

## II

## DISCUSSION

### A. Habeas Corpus Standards of Review

We review de novo the district court's denial of a habeas petition. *Daniels v. Knight*, 476 F.3d 426, 433 (7th Cir. 2007). Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), we may grant habeas relief only if the state court's "decision was contrary to, or involved an unreasonable application of, Supreme Court precedent," *id.*, or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2). To grant habeas relief under the "contrary to" clause, we must find that the state court reached a result opposite to that reached by the Supreme Court on materially indistinguishable facts. *See Terry Williams v. Taylor*, 529 U.S. 362, 405 (2000); *Jackson v. Miller*, 260 F.3d 769, 774 (7th Cir. 2001). To obtain relief under the "unreasonable application" clause, a habeas petitioner must show that the state court's decision unreasonably applied clearly established Supreme Court precedent by unreasonably extending a rule to a context where it should not have applied or by unreasonably refusing to extend a rule to a context where it should have applied. *Jackson*, 260 F.3d at 774. The state court's factual findings are presumed correct; this presumption can be rebutted by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 348 (2003); *Barrow v. Uchtman*, 398 F.3d 597, 603 (7th Cir. 2005).

---

[5] (...continued)
Family Services. Any potential issues arising from these pending proceedings are not before this court.

In short, the state court decision must be "both incorrect *and* unreasonable." *Washington v. Smith*, 219 F.3d 620, 628 (7th Cir. 2000) (emphasis in original); *see also Terry Williams*, 529 U.S. at 407-08.

Mr. Virsnieks raises three claims on appeal: (1) that his plea was not voluntary and intelligent because he had not been informed that sexual assault was the predicate felony for the burglary charge; (2) that the order requiring him to register as a sex offender violated *Apprendi* because in his case such an order is punitive, despite *Smith v. Doe*, 538 U.S. 84 (2003),[6] and exceeds the maximum statutorily authorized penalty for burglary; and (3) that his trial and appellate counsel provided ineffective assistance.

## B. Voluntary and Intelligent Plea

Mr. Virsnieks asserts that the Wisconsin trial court's determination that he knew that his plea involved the sexual assault was unreasonable.[7] He further submits that the Wisconsin court's decision was contrary to, and an

---

[6] In *Smith*, the Supreme Court held that Alaska's sexual offender statute was not punitive for purposes of the Ex Post Facto Clause. *Smith v. Doe*, 538 U.S. 84, 105-06 (2003).

[7] The Wisconsin Court of Appeals adjudicated on the merits Mr. Virsnieks' claim that his plea was involuntary and unintelligent, but it did so without reference to federal law. The Supreme Court has held that this is of no consequence. *See Early v. Packer*, 537 U.S. 3, 8 (2002) (holding that, under AEDPA, a state court need not cite or even be aware of Supreme Court precedent, "so long as neither the reasoning nor the result of the state-court decision contradicts" the Court's precedents); *see also Harrison v. McBride*, 428 F.3d 652, 665-67 (7th Cir. 2005).

unreasonable application of, clearly established Supreme Court precedent because his plea had been neither voluntary nor intelligent. In support of this contention, Mr. Virsnieks points to the lack of any explicit statement, in either the information or the criminal complaint, at the preliminary hearing or at the plea hearing, that sexual assault was the predicate felony for the burglary charge.

**1.**

The principles that govern our inquiry are well settled. A guilty plea[8] must be voluntary and intelligent. *Parke v. Raley*, 506 U.S. 20, 29 (1992). To enter a voluntary and intelligent plea, a defendant must have full awareness of the plea's "direct consequences," *Brady v. United States*, 397 U.S. 742, 755 (1970), "real notice of the true nature of the charge against him," *Henderson v. Morgan*, 426 U.S. 637, 645 (1976), and understand "the law in relation to the facts," *McCarthy v. United States*, 394 U.S. 459, 466 (1969). Whether a plea was entered knowingly and voluntarily is determined from "all of the relevant circumstances surrounding it." *Brady*, 397 U.S. at 749. Guilty pleas "are accorded a great measure of finality" because they "are important components of this country's criminal justice system." *Blackledge v. Allison*, 431 U.S. 63, 71 (1977). As a result, the defendant bears the burden of proving that the plea he entered was involuntary and unintelligent. *Marx v. United States*, 930 F.2d 1246, 1250 (7th Cir. 1991).

---

[8] We employ the same standard in determining whether a no contest plea was entered knowingly and voluntarily. *See, e.g., McGrath v. United States*, 402 F.2d 466, 467 (7th Cir. 1968).

**2.**

Under AEDPA, we generally must accept a state court's factual findings. *Araujo v. Chandler*, 435 F.3d 678, 682 (7th Cir. 2005) (citing 28 U.S.C. §§ 2254(d)(2); 2254(e)(1)). Therefore, as a threshold matter, Mr. Virsnieks must overcome the state court's factual determination that he knew that the offense underlying the burglary charge was the sexual assault.

Mr. Virsnieks has failed to show that the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Wisconsin trial court found "incredible" Mr. Virsnieks' testimony that his trial counsel had told him that the predicate felony was "use of the facilities," a non-felony in Wisconsin. R.8, Ex. S at 24. The court further discredited Mr. Virsnieks' claim that he did not know that the sexual assault was the predicate felony for the burglary.

Mr. Virsnieks points out that the information, criminal complaint, preliminary hearing and plea hearing did not state explicitly that sexual assault was the predicate felony. Nevertheless, the Wisconsin court made a credibility determination—which we generally are required to accept under AEDPA[9]—that, given the strong suggestions to that effect contained in the criminal complaint, information and Buechel's preliminary hearing testimony, Mr. Virsnieks must have known that the sexual assault was the predicate offense for his plea. Although the information available in

---

[9] *See Murrell v. Frank*, 332 F.3d 1102, 1112 (7th Cir. 2003) (noting that we extend "great deference" to a state court's credibility determinations); *Ward v. Sterns*, 334 F.3d 696, 710 (7th Cir. 2003).

the PSR and the statements made by the trial judge in his questioning of Dr. Nelson during the sentencing hearing post-dated Mr. Virsnieks' plea hearing, his failure to object, or even inquire as to whether the sexual assault was the predicate felony for his guilty plea to burglary, buttresses the state court's credibility determination.

### 3.

Mr. Virsnieks' claim that his plea cannot stand because he was not informed adequately about the potential that he would be ordered to register as a sex offender cannot succeed for an additional reason. The registration order was a collateral consequence about which the State was not required to inform him. The Supreme Court has held that a guilty plea is voluntary and intelligent if the defendant enters the plea with full awareness of its "direct consequences." *Brady*, 397 U.S. at 755. Thus, although a defendant must be informed of the direct consequences flowing from a plea, he need not be informed of collateral consequences.[10] *Warren v. Richland County Circuit Court*, 223 F.3d 454, 457 (7th Cir. 2000).[11]

---

[10] We have defined direct consequences as the "immediate, and automatic consequences of the guilty plea." *United States v. Jordan*, 870 F.2d 1310, 1317 (7th Cir. 1989) (internal quotation marks and citation omitted); *see also Little v. Crawford*, 449 F.3d 1075, 1080 (9th Cir. 2006); *Wilson v. McGinnis*, 413 F.3d 196, 199 (2d Cir. 2005); *Steele v. Murphy*, 365 F.3d 14, 17 (1st Cir. 2004); *George v. Black*, 732 F.2d 108, 110 (8th Cir. 1984); *Bryant v. Cherry*, 687 F.2d 48, 49-50 (4th Cir. 1982).

[11] *See also Wilson*, 413 F.3d at 199-200; *Steele*, 365 F.3d at 17; *United*
(continued...)

The Supreme Court has not delimited comprehensively the particular consequences that are direct or collateral for purposes of evaluating the voluntariness of a guilty plea. *See Dalton v. Battaglia*, 402 F.3d 729, 733 (7th Cir. 2005). Under its "contrary to" clause, AEDPA prohibits a federal court from granting habeas relief unless the state court's decision contradicts "clearly established Federal law as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). As we have explained previously, "[t]here can be no Supreme Court precedent to be contradicted or unreasonably applied," and therefore no habeas relief, when there is no Supreme Court precedent on point or where the Court has reserved the question. *Lockhart v. Chandler*, 446 F.3d 721, 724 (7th Cir. 2006); *Simpson v. Battaglia*, 458 F.3d 585, 597 (7th Cir. 2006).

To a very limited extent, reference to lower court holdings may be evidence of a rule mandated implicitly by the Supreme Court. For example, we held in *Dalton* that, for purposes of habeas review under AEDPA, the potential length of incarceration to which a prisoner exposed himself by pleading guilty was a direct consequence of a guilty plea. *Dalton*, 402 F.3d at 733.

Unlike in *Dalton*, the issue here—whether being ordered to register as a sexual offender is a direct or collateral consequence—is not sufficiently clear cut to permit us to conclude that the state court's decision was contrary to, or an unreasonable application of, *Brady*. Indeed, to the very

---

[11] (...continued)
*States v. Sambro*, 454 F.2d 918, 922 (D.C. Cir. 1971) (en banc) ("We presume that the Supreme Court meant what it said when it used the word '*direct*'; by doing so, it excluded *collateral* consequences." (emphasis in original)).

limited extent that the decisions of the courts of appeals can "guide us in determining what constitutes an unreasonable application" of clearly established Supreme Court precedent, *see Wilson v. McGinnis*, 413 F.3d 196, 199 (2d Cir. 2005), these decisions indicate that no clearly established federal law requires that defendants be informed of the possibility that they could be ordered to register as sexual offenders. *See, e.g.*, *Steele*, 365 F.3d at 16-17 (holding that "the possibility of commitment for life as a sexually dangerous person is a collateral consequence of pleading guilty"); *Warren*, 223 F.3d at 456 (holding that the failure of a state court to inform a defendant prior to his *Alford* plea of the possibility that his probation could be revoked if he did not admit during counseling sessions that he had committed a sexual offense is a collateral consequence); *George v. Black*, 732 F.2d 108, 110 (8th Cir. 1984) (holding that the possibility of confinement pursuant to civil commitment proceedings after the expiration of a criminal sentence is a collateral consequence); *cf. United States v. Kikuyama*, 109 F.3d 536, 538 (9th Cir. 1997) (holding that a "consequence is 'collateral' where it lies within the discretion of the court to impose it" and therefore that a defendant's consecutive sentence was collateral); *Wall v. United States*, 500 F.2d 38, 39 (10th Cir. 1974) (same).

## C. *Apprendi* **Claim**[12]

Mr. Virsnieks next submits that the order requiring him to register as a sex offender increased the penalty for burglary beyond the maximum statutorily authorized sentence because the Wisconsin burglary statute does not include registration as an available sentencing option.[13] According to Mr. Virsnieks, the finding of fact that supported the sex offender registration order—that a sexual assault occurred during the course of the burglary—either must have been admitted by him or must have been submitted to a jury and proven beyond a reasonable doubt. Because neither of these adjudicatory procedures were followed and because the order requiring him to register as a sexual offender, in his view, is punitive, the Wisconsin courts ran afoul of *Apprendi*.

---

[12] This argument does not require the retroactive application of *Apprendi*. *See Curtis v. United States*, 294 F.3d 841, 845 (7th Cir. 2002) (holding that *Apprendi* does not apply retroactively under the principles established by *Teague v. Lane*, 489 U.S. 288 (1989)). Mr. Virsnieks' conviction became final after June 26, 2000, the date on which the Supreme Court issued *Apprendi*. *See Spreitzer v. Peters*, 114 F.3d 1435, 1442 (7th Cir. 1997) ("A state conviction and sentence become final for purposes of retroactivity analysis when the availability of direct appeal to the state courts has been exhausted and the time for filing a petition for a writ of certiorari has elapsed or a timely filed petition has been finally denied." (internal quotation marks omitted)).

[13] Mr. Virsnieks was ordered to register under a Wisconsin statute separate from the burglary provision. Wis. Stat. § 973.048(1m). This provision gives trial courts the discretion to order defendants convicted of burglary to register if "the court determines that the underlying conduct was sexually motivated . . . and that it would be in the interest of public protection to have the person report." *Id.*

Were Mr. Virsnieks' *Apprendi* argument successful, we would issue a writ of habeas corpus releasing him from the obligation to register as a sex offender. We begin by considering whether this relief is cognizable under the habeas statute.

**1.**

The United States Congress has authorized federal courts to entertain petitions for a writ of habeas corpus only where the individual seeking the writ is "in custody." 28 U.S.C. § 2241(c); *see also id.* § 2254(a). Historically, federal courts interpreted the "in custody" requirement strictly; they required that an individual be in the state's physical custody at the time that he or she filed the habeas petition. *See* Richard H. Fallon, Jr., Daniel J. Meltzer & David L. Shapiro, Hart and Wechsler's The Federal Courts and the Federal System 1395 (5th ed. 2003) (citing *Wales v. Whitney*, 114 U.S. 564 (1885); *Stallings v. Splain*, 253 U.S. 339 (1920); *Weber v. Squier*, 315 U.S. 810 (1942)). In more recent times, beginning with *Jones v. Cunningham*, 371 U.S. 236, 242-43 (1963), the Supreme Court has broadened the definition of custody. Habeas corpus is now available, for example, to prisoners who are released on parole,[14] personal recognizance,[15] and bail,[16] as well as those serving consecutive

---

[14] *Jones v. Cunningham*, 371 U.S. 236, 242-43 (1963).

[15] *Hensley v. Mun. Court, San Jose Milpitas Judicial Dist.*, 411 U.S. 345, 346 (1973); *see also Justices of Boston Mun. Court v. Lydon*, 466 U.S. 294, 300 (1984).

[16] *Lefkowitz v. Newson*, 420 U.S. 283, 286 n.2 & n.8 (1975).

sentences;[17] to aliens seeking entry into the United States;[18] and to individuals seeking to challenge their induction into military service.[19]

Despite this expansion of the definition of custody, habeas petitioners must establish that they are subject to conditions that "significantly restrain . . . [their] liberty." *Jones*, 371 U.S. at 243; *see also Hensley v. Mun. Court, San Jose Milpitas Judicial Dist.*, 411 U.S. 345, 351 (1973) ("The custody requirement of the habeas corpus statute is designed to preserve the writ of habeas corpus as a remedy for *severe restraints* on individual liberty." (emphasis added)); *Harts v. Indiana*, 732 F.2d 95, 96 (7th Cir. 1984) (per curiam). In *Jones* and other cases expanding the definition of custody, the Court emphasized the physical nature of the restraints on liberty that satisfied the custody requirement. *Jones*, *Hensley* and *Peyton*, each involved restraints on a habeas petitioner's ability to move about freely. *Jones*, 371 U.S. at 242 ("Petitioner is confined by the parole order to a particular community, house, and job at the sufferance of his parole officer. He cannot drive a car without permission."); *Peyton v. Rowe*, 391 U.S. 54, 67 (1968) (holding that "a prisoner serving consecutive sentences is 'in custody' under any one of them"); *Hensley*, 411 U.S. at 351 (emphasizing that the petitioner "cannot come and go as he pleases" and that his "freedom of movement rests in the hands of state judicial officers, who may demand his presence at any time and without a moment's notice").

---

[17] *Peyton v. Rowe*, 391 U.S. 54, 67 (1968); *see also Garlotte v. Fordice*, 515 U.S. 39, 46-47 (1995).

[18] *Jones*, 371 U.S. at 240 n.9 (collecting cases).

[19] *Id.* at 240 n.11.

Thus, the collateral consequences of a conviction, those consequences with negligible effects on a petitioner's physical liberty of movement, are insufficient to satisfy the custody requirement. *See Maleng v. Cook*, 490 U.S. 488, 491-92 (1989); *Carafas v. LaVallee*, 391 U.S. 234, 238 (1968); *cf. Bunn v. Conley*, 309 F.3d 1002, 1008 (7th Cir. 2002) (holding that a prisoner's challenge to 18 U.S.C. § 4042(b), which requires that the Bureau of Prisons notify a state's chief law enforcement officer that a prisoner convicted of a crime of violence is being released, is not cognizable in habeas).

In accordance with these principles, courts have held that orders of restitution, fines and the revocation of medical and driver's licenses do not satisfy the "in custody" requirement. *See, e.g., Smullen v. United States*, 94 F.3d 20, 25 (1st Cir. 1996); *Lefkowitz v. Fair*, 816 F.2d 17, 20 (1st Cir. 1986) (per curiam); *Harts*, 732 F.2d at 96-97; *Hanson v. Circuit Court*, 591 F.2d 404, 407 (7th Cir. 1979). In contrast, a sentence of 500 hours of community service has been held to restrict sufficiently an individual's physical liberty of movement to satisfy the requirement. *Barry v. Bergen County Prob. Dep't*, 128 F.3d 152, 162 (3d Cir. 1997).

Indeed, given the habeas statute's "in custody" requirement, courts have rejected uniformly the argument that a challenge to a sentence of registration under a sexual offender statute is cognizable in habeas. *See Leslie v. Randle*, 296 F.3d 518, 521-23 (6th Cir. 2002) (holding that a sentence of registration imposed under Ohio's sex offender law did not meet the custody requirement); *Henry v. Lungren*, 164 F.3d 1240, 1241-42 (9th Cir. 1999) (same result under California's statute); *McNab v. Kok*, 170 F.3d 1246, 1247 (9th Cir. 1999) (Oregon's statute); *Williamson v. Gregoire*, 151 F.3d 1180, 1184-85 (9th Cir. 1998) (Washington's statute). In *Gregoire*, a former Washington state prisoner filed a habeas

action challenging the requirement that he register under Washington's sexual offender statute. 151 F.3d at 1181-82. The Ninth Circuit concluded that the petitioner did not meet the in custody requirement, reasoning that registration did not constitute a significant restraint on the petitioner's "physical sense of liberty." *Id.* at 1183, 1184-85. The registration statute itself did not place any physical restraints on the petitioner's freedom of movement because the law did not specify any place within or without Washington where the petitioner could not travel. *Id.* at 1184. He did not have to register personally at the sheriff's office but could effectuate registration by mail. *Id.* at 1183-84. The court recognized that "the registration and notification provisions might create some kind of subjective chill on" the petitioner's "desire to travel." *Id.* at 1184. This restriction, however, constituted no greater a burden on the petitioner's freedom of movement than the loss of a driver's license, which, the court noted, is insufficient to satisfy the custody requirement. *Id.* (citing *Lillios v. New Hampshire*, 788 F.2d 60, 61 (1st Cir. 1986); *Harts*, 732 F.2d at 96-97; *Westberry v. Keith*, 434 F.2d 623, 624-25 (5th Cir. 1970)). Although failure to comply with the registration requirements could lead to future incarceration, the court explained that "this potentiality . . . , dependent entirely on whether [the petitioner] chooses to obey the Washington statute, actually makes the sex offender law very similar to the restitution orders that other courts have found not to create custody." *Id.* (citing *United States v. Michaud*, 901 F.2d 5, 7 (1st Cir. 1990)).[20]

---

[20] The Ninth Circuit has applied this holding and reiterated this reasoning in two subsequent cases dealing with similar statutes

(continued...)

In *Leslie v. Randle*, the Sixth Circuit was confronted with this same issue in a case with a similar posture as the one before this court. In *Leslie*, a petitioner filed a habeas action challenging the constitutionality of Ohio's sexual predator statute; the action was filed during the term of his incarceration. *Leslie*, 296 F.3d at 522. Employing reasoning similar to that of the Ninth Circuit in *Gregoire*, the Sixth Circuit held that, despite the fact that the petitioner was incarcerated at the time of his petition, his challenge to the registration portion of his sentence was not cognizable in habeas. *Id.* at 523. Although Ohio's statute required the petitioner to "verify his address with the sheriff every 90 days even if he never leaves his house," the statute did not condition his "ability to move to a different community or residence . . . on approval by a government official." *Id.* at 522. Additionally, the court explained, the petitioner's "freedom is not conditioned on his ability to remain employed, nor is he prohibited from engaging in any legal activities." *Id.* Finally, the court noted that the Supreme Court of Ohio has held that the sexual-predator statute is remedial rather than punitive; a remedial statute, according to the court, is more analogous to collateral consequences than to "severe restraints on freedom of movement." *Id.* at 523.

In this case, the Wisconsin sexual offender registration statute, Wis. Stat. § 301.45 et seq., does not impose any significant restriction on a registrant's freedom of movement. Like the statutes in place in Washington and Ohio,

---

[20] (...continued)
in the states of California and Oregon. *See Henry v. Lungren*, 164 F.3d 1240, 1241-42 (9th Cir. 1999); *McNab v. Kok*, 170 F.3d 1246, 1247 (9th Cir. 1999).

the Wisconsin statute itself does not limit where a registrant may move or travel within Wisconsin, within the United States or internationally.[21] Although registrants are required to keep the Wisconsin Department of Corrections ("WDOC") apprised of certain personal information[22] and to update this information every ninety days, Wis. Stat. § 301.45(3)(b)(1m), registrants may do so by mail. Wis. Admin. Code § DOC 332.06(2). Moreover, a registrant may update the WDOC with any changes by using a telephonic registration system. *See id.* § DOC 332.06(2)(a). Accordingly, the Wisconsin statute imposes minimal restrictions on a registrant's physical liberty of movement.

Our circuit's case law, as well as ample case law from other circuits, dictates that the future threat of incarceration for registrants who fail to comply with the statute is insufficient to satisfy the custody requirement. *Hanson*, 591 F.2d at 407 & n.6 (holding that the potential that nonpayment of a fine will result in incarceration is insufficient to satisfy the custody requirement); *see also Leslie*, 296 F.3d at

---

[21] The statute does prevent certain registrants from establishing or changing their residence. Wis. Stat. § 301.45(4r). This restriction, however, applies only to individuals who are otherwise in custody—those on parole or extended supervision—*and* who have not complied with the statute's reporting requirements. *Id.* Thus, in addition to not applying to non-custodial registrants, registrants themselves can control whether this provision is triggered. *Williamson v. Gregoire*, 151 F.3d 1180, 1184-85 (9th Cir. 1998).

[22] A registrant must provide the WDOC with, among other information, his or her name, address, date of birth, gender, race, weight, hair and eye color, the specific statute that the registrant violated as well as the name and address of the registrant's employer or school. *See* Wis. Stat. § 301.45(2), (4m).

522; *Gregoire*, 151 F.3d at 1184; *Tinder v. Paula*, 725 F.2d 801, 804 (1st Cir. 1984) (collecting cases); *cf. Maleng*, 490 U.S. at 492. As the First Circuit explained in *Tinder*, "the possibility that the court will resort to imprisonment to enforce the fine is considered too remote and speculative to warrant the invocation of federal habeas jurisdiction." 725 F.2d at 804; *cf. Maleng*, 490 U.S. at 492 (holding that a habeas petitioner does not "remain 'in custody' under a conviction after the sentence imposed for it has fully expired, merely because of the possibility that the prior conviction will be used to enhance the sentences imposed for any subsequent crimes of which he is convicted").

Like the statutes in *Gregoire* and *Leslie*, the Wisconsin sexual offender registration statute is considered remedial, rather than punitive, in nature. *State v. Bollig*, 605 N.W.2d 199, 205 (Wis. 2000). In *Bollig*, the Supreme Court of Wisconsin held that "Wisconsin's registration statute does not evince the intent to punish sex offenders, but rather reflects the intent to protect the public and assist law enforcement." *Id.*; *see also Smith v. Doe*, 538 U.S. 84 (2003) (holding that Alaska's sexual offender registration statute is not punitive for purposes of the Ex Post Facto Clause). These authorities support our conclusion that the registration requirements resemble more closely those collateral consequences of a conviction that do not impose a severe restriction on an individual's freedom of movement. *See United States v. Keane*, 852 F.2d 199, 202 (7th Cir. 1988) ("[C]ivil disabilities alone are not 'custody' authorizing collateral litigation."); *see also Leslie*, 296 F.3d at 522-23; *Bunn*, 309 F.3d at 1008; *Gregoire*, 151 F.3d at 1184-85.

Consequently, we hold that Mr. Virsnieks' *Apprendi* argument, standing alone, does not satisfy the habeas

statute's "in custody" requirement.[23]

## 2.

Even though Mr. Virsnieks' habeas petition includes an independent, custodial claim—albeit one whose merits we already have rejected—he may not bypass the habeas statute's "in custody" requirement. In other words, a court does not have "pendent" jurisdiction over non-cognizable habeas claims. *See, e.g.*, *Kaminski v. United States*, 339 F.3d 84, 88 (2d Cir. 2003).

We begin with the text of the statute. Section 2254 authorizes federal courts to "entertain an application for a writ of habeas corpus in behalf of a person *in custody* pursuant to the judgment of a State court *only on the ground that he is in custody* in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a) (emphasis added). The plain language of the statute therefore commands that courts entertain habeas petitions "only" on the ground that a prisoner is "in custody," and, by linking a court's ability to entertain a habeas petition to the particular relief sought, the language of the statute prevents consideration of pendent challenges.

---

[23] We note that neither *Smith v. Doe*, 538 U.S. 84, 91 (2003), nor *Connecticut Department of Public Service v. Doe*, 538 U.S. 1, 6 (2003), the two cases in which the Supreme Court has considered challenges to sex offender registration statutes, assist Mr. Virsnieks' habeas claim. The plaintiffs in these cases employed 42 U.S.C. § 1983, rather than habeas corpus, as the vehicle for challenging the registration statutes. We express no view as to whether Mr. Virsnieks may proceed under section 1983.

Several of our sister circuits have considered this issue in the context of section 2255, and they all have reached the same conclusion. *Kaminski*, 339 F.3d at 89; *United States v. Thiele*, 314 F.3d 399, 402 (9th Cir. 2002); *United States v. Smullen*, 94 F.3d 20, 25-26 (1st Cir. 1996); *United States v. Segler*, 37 F.3d 1131, 1136-37 (5th Cir. 1994). One of the concerns underpinning their answer is the potential that allowing pendent jurisdiction could result in incongruent access to federal habeas review among prisoners. In *Segler*, for example, a federal habeas petitioner brought several challenges to his sentence of imprisonment as well as an ineffective assistance of counsel claim relating to a fine that the district court had imposed. The Fifth Circuit held that his ineffective assistance of counsel claim relating to the fine was not cognizable in habeas notwithstanding the fact that the other claims brought in the same petition were cognizable. The court explained that section "2255's limitation on who may seek release from federal custody also implies a limitation on the claims they may assert to obtain a release." *Segler*, 37 F.3d at 1137. Although the petitioner was a federal prisoner, thus "bring[ing] *him* clearly within the class of petitioners described in § 2255 . . . his ineffective assistance of counsel claim relating to his fine raises the question whether *his claim* arises under § 2255." *Id.* (emphasis in original). The court held that a habeas petitioner who brings an ineffective assistance of counsel claim "must satisfy *Strickland*'s prejudice requirement by showing harm that relates to his custody." *Id.* This conclusion, the court explained, stemmed from the potential incongruence that could result from a contrary rule:

A convicted defendant who receives an allegedly erroneous fine because of constitutionally inadequate

assistance of counsel cannot seek post-conviction relief under § 2255 and neither should a petitioner who is both fined and imprisoned have an opportunity to assert an identical fine-related claim under § 2255.

*Id.* (internal citation omitted). Under the court's "reading of the plain language of § 2255," it found "no reason why Congress would have intended to treat these two identical ineffective assistance of counsel claims differently." *Id.*; *United States v. Hatten*, 167 F.3d 884, 887 (5th Cir. 1999) (reaffirming the holding in *Segler*).

The First, Second and Ninth Circuits similarly have recognized that permitting habeas petitioners who proceed under section 2255 to bring non-cognizable claims could result in incongruent access to federal habeas review. *See, e.g.*, *Kaminski*, 339 F.3d at 88 (discussing the Fifth Circuit's incongruence rationale); *Thiele*, 314 F.3d at 401-02 ("[C]ognizable [habeas] claims in a § 2255 motion do not run interference for non-cognizable claims."); *Smullen*, 94 F.3d at 23-26 (adopting the Fifth Circuit's holding and relying on the incongruence rationale).

These courts have recognized that the potential for incongruent access to federal habeas review is unwarranted by section 2255's language and purpose. Section 2255 affords relief to prisoners who are "in custody" and who "claim[] the right to be released," *see* 28 U.S.C. § 2255, and the statute "lies to allow attacks on wrongful custodies," *Kaminski*, 339 F.3d at 89. Given the statute's uniform focus on custodial sentences, "there is . . . no reason why the presence of a plausible claim against a custodial punishment should make a noncustodial punishment more amenable to collateral review than it otherwise might be." *Id.*; *Segler*, 37 F.3d at 1137. In addition to finding no support in the statutory language, such incongruence would

encourage prisoners to bring frivolous claims against custodial sentences in order to trigger federal habeas review of non-custodial sentences or of the collateral consequences of a conviction. *Kaminski*, 339 F.3d at 88.

Although these cases have arisen within the context of section 2255, their teachings apply as well in the context of section 2254. Indeed, allowing state habeas petitioners to bring such claims would increase the potential for incongruence. Because every prisoner convicted and sentenced in federal court is subjected to the same sentencing regime, there is some limitation on disparities among the sentences imposed by federal courts. In contrast, state prisoners, as a class, are subjected to an assortment of sentencing regimes depending on the state in which they are convicted and sentenced; moreover, states diverge widely in the degree of sentencing discretion with which they endow their judges. Permitting habeas petitioners who proceed under section 2254 to bring non-custodial claims therefore would add an additional dimension of potential incongruence—among prisoners sentenced in different states employing different sentencing regimes. A prisoner convicted in a state that statutorily mandates the imposition of incarceration and a fine should not have greater access to federal habeas review of his fine than a prisoner from another state who, because of the sentencing discretion that the state affords its judges, only had a fine imposed on him.

Consequently, we conclude that Mr. Virsnieks may not bypass the "in custody" requirement simply because his petition includes an independent, cognizable claim. Mr. Virsnieks' *Apprendi* argument does not satisfy the habeas statute's "in custody" requirement, and therefore we do not address its merits.

## D. Ineffective Assistance of Trial Counsel

Mr. Virsnieks contends that his trial counsel was ineffective because he misinformed Mr. Virsnieks that the predicate felony to the burglary charge was "use of the facilities." The Wisconsin courts rejected this contention as a factual matter because they did not find that such advice was given. As we have already discussed, this finding is entitled to deference, and Mr. Virsnieks has not established that the state court's finding was based on an unreasonable determination of the facts. Accordingly, we cannot accept Mr. Virsnieks' ineffective assistance of trial counsel claim.

### Conclusion

For the foregoing reasons, the judgment of the district court is affirmed.

AFFIRMED